396 A.2d 635

COMMONWEALTH of Pennsylvania, Appellee,

v.

Emil Amos DOLFI, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1978.

Decided Jan. 24, 1979.

Richard H. Martin, Baskin, Boreman, Wilner, Sachs & Gondelman, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO, and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant Emil Dolfi and co-defendants, Gaylord Rumble and Edith Marie Blewitt, were convicted in a nonjury trial of violating 18 Pa.C.S.A. § 903 (conspiracy) and 18 Pa.C.S.A. § 5512 (lotteries). Following denial of the post-verdict motions, appellant was ordered to pay a fine of $1,000 and to

undergo two years of probation.[1] Appellant's petition for allowance of appeal to this Court was granted.

■ Appellant attacks the sufficiency of the evidence to convict him of conspiracy and, thus, of a violation of 18 Pa.C.S.A. § 5512 (lotteries). The test for evaluating the sufficiency of the evidence is whether, viewing the entire record in the light most favorable to the Commonwealth, a finder of fact could reasonably have found all elements of the crime charged had been proven beyond a reasonable doubt. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

The evidence in the record may be summarized as follows:

During April, 1975, Sergeant Herbert Stouffer, an officer of the Pennsylvania State Police, assigned an officer to investigate an allegation from an unidentified source that appellant was involved in a numbers operation in Clairton, Pennsylvania. When the officer conducting the surveillance was transferred, Sergeant Stouffer requested Chief of Police Kenneth Ujevich of Clairton to assume supervision of the investigation.

On April 15, 1975, Chief Ujevich and Clairton Police Lieutenant Milas conducted a surveillance of the parking lot adjacent to Maracini's Supermarket from a distance of about fifty yards. At about 2:20 p. m., the officers observed a brown Oldsmobile, driven by an unidentified woman, pull into the parking lot.[2] Gaylord Rumble, who had been standing near the front door of the market, took something that looked like white papers from his pocket and handed them to the driver of the Oldsmobile. Both then departed separately.

On April 16, 1975, Chief Ujevich and Clairton Police Detective Scully watched the same parking area from ap-

1. A prison sentence of not less than one year nor more than two years was imposed, but was to take effect only if the conditions of probation were violated.

2. The vehicle was registered to a Joyce Gracon, who was later determined to be the daughter of appellant.

proximately the same distance. At about 2:20 p. m., the Chief observed Gaylord Rumble who was parked in a vehicle and appellant who arrived in a Lincoln Continental. Appellant left his automobile and Rumble handed him what looked like white pieces of paper.

On April 17, 1975, Chief Ujevich and Detective Scully conducted surveillance of the same parking lot at the same time of day. The Chief testified the brown Oldsmobile driven by the unidentified woman arrived about 2:10 p. m. and was followed five minutes later by Rumble. Shortly thereafter, appellant arrived and conversed with Rumble; then, both he and appellant conversed with the driver of the Oldsmobile.[3] The three left the parking lot separately. Nothing was observed being passed. However, Chief Ujevich contacted Sergeant Stouffer to inform him enough information had been gathered to provide the probable cause necessary to obtain search warrants for the three autos involved.

On April 18, 1975, Sergeant Stouffer and Chief Ujevich stationed themselves near the same parking lot around 2:20 p. m. Appellant drove into the lot accompanied by a small child. The brown Oldsmobile, driven by an unidentified woman and carrying a female passenger, then entered the lot, and appellant got out of his vehicle, handed the child to one of the women in the Oldsmobile, and left the lot. The child was later identified as a grandchild of the driver of the Oldsmobile, Edith Marie Blewitt. After appellant left, Rumble arrived and was observed handing what looked like a white envelope to one of the female occupants of the Oldsmobile.

A short time after all three vehicles left, police stopped appellant's auto and the Oldsmobile driven by Blewitt and directed that the vehicles and occupants proceed to a magistrate's office so that the search warrants could be executed.

---

**3.** There is a slight internal inconsistency in Chief Ujevich's testimony in that he initially reported the Oldsmobile arrived first at about 2:10 p. m., and then testified it arrived while Rumble and appellant were conversing.

A search of appellant's person and of the two vehicles revealed nothing. But, while the parties were in the magistrate's office, Chief Ujevich noticed and reached for a brown bag in the bib of the overalls worn by the child, who was now being held by Mrs. Blewitt. Although Blewitt backed away from him, he was able to take the bag from the child's clothing. The contents were identified as numbers paraphernalia.

According to Sergeant Stouffer, during questioning of appellant, Blewitt, and Blewitt's passenger, Blewitt said her passenger was a friend and "had nothing to do with it." Sergeant Stouffer further testified that, during his interrogation of the two women, appellant stated "the other lady is not involved in it."

Rumble was arrested a short time later. Items identified as numbers slips were seized from his person and automobile.

 An unlawful agreement or an agreement to do a lawful act in an unlawful manner is an essential element of a conspiracy, and the agreement among co-conspirators is the nexus which makes each member criminally responsible for acts of the others in furtherance of the conspiracy. 18 Pa.C.S.A. § 903(a); *Commonwealth v. Menginie*, 477 Pa. 156, 383 A.2d 870 (1978); *Commonwealth v. Roux*, supra; *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972). Thus, a necessary ingredient of evidence sufficient to support a conspiracy conviction is proof beyond a reasonable doubt of a conspiratorial agreement.

 Although a common understanding is at the heart of every conspiracy, it is generally difficult to prove an explicit or formal agreement. Therefore, a conspiracy may be established by circumstantial evidence, i. e., the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. See *Commonwealth v. Roux*, supra; *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Yobaggy*, 410 Pa. 172, 188 A.2d 750 (1963);

*Commonwealth v. Minnich,* 236 Pa.Super. 285, 344 A.2d 525 (1975).

■ While proof of the agreement which is an essential element of a conspiracy may be accomplished by circumstantial evidence, if "a conviction is based entirely on circumstantial evidence, 'the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all.' If the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand." *Commonwealth v. Simpson,* 436 Pa. 459, 464, 260 A.2d 751, 754 (1970). [Citation omitted.]

■ The Commonwealth has attempted to prove appellant's involvement in a conspiratorial agreement in part by showing he met three times in a parking lot with other suspects. On one occasion, appellant was handed what appeared from at least fifty yards away to be a white piece of paper. The next day he conversed with two persons, and on the third day he was observed handing a small child to the female occupants of an automobile. The child proved to be the grandchild of one of the women. While these events may arouse some suspicion, they surely do not rise to proof beyond a reasonable doubt of a conspiratorial agreement.

Additionally, the Commonwealth offers appellant's statement that Blewitt's passenger was "not involved in it." Appellant made this comment while Sergeant Stouffer was questioning the two women who had occupied the Oldsmobile. Again, the statement may raise some suspicion, but it is just as possible it was a chivalrous remark, rather than an implied admission of guilt.

Finally, the Commonwealth offered the numbers slips seized from the child's overalls as circumstantial evidence of a conspiratorial agreement.[4] This evidence does little to

---

4. Appellant argues that the evidence was inadmissible against him unless the Commonwealth first established a prima facie case of conspiracy. Because of the disposition regarding sufficiency of the evidence, this issue need not be resolved.

bolster appellee's proof of an agreement since it cannot be directly linked to appellant. The brown bag was not observed by the surveillance team at the time the child was passed to one of the two occupants of the other vehicle. After the child was handed over, the occupants of the Oldsmobile received unidentified material from a third party, Rumble. Moreover, there was a gap in time between the surveillance and the time of the search yielding the evidence, during which the evidence could have been obtained.

There being no direct link between appellant and the seized numbers slips, their possession by Blewitt was merely another suspicious circumstance regarding appellant. Although several suspicious circumstances were proven from which appellant's involvement in a conspiratorial agreement could be conjectured, such proof does not rise to proof beyond a reasonable doubt required for a criminal conviction.

■ Because the evidence is insufficient to support a conviction for conspiracy, the conviction for violation of 18 Pa.C.S.A. § 5512 (lotteries) must fail as well because there is no independent evidence to support it.[5] Therefore, the order of the Superior Court and the convictions and order of the trial court are reversed. Appellant is ordered discharged.

O'BRIEN, J., did not participate in the decision of this case.

POMEROY, former J., did not participate in the decision of this case.

ROBERTS and NIX, JJ., dissent, being of the view that the record amply supports the jury's finding that appellant has, beyond a reasonable doubt, engaged in a conspiracy.

5. Cf. *Commonwealth v. Roux*, supra; *Commonwealth v. Eiland*, supra; *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255, cert. denied 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963).