412 A.2d 882

**COMMONWEALTH of Pennsylvania**

v.

**Robert Lee JEFFERSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1979.

Filed Oct. 19, 1979.

William J. Mazzola, Philadelphia, for appellant.

Melvin R. Shuster, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.*

* Justice LOUIS L. MANDERINO of the Supreme Court of Pennsylvania, and Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

CIRILLO, Judge:

In July of 1976, appellant Robert Lee Jefferson was convicted by a jury of murder in the first degree and conspiracy.[1] Post-verdict motions were denied and appellant was sentenced to imprisonment for life and a concurrent term of one to two years, respectively. This direct appeal followed. We affirm the judgment of sentence.

Appellant first argues that the evidence presented by the Commonwealth was insufficient to prove his guilt beyond a reasonable doubt. In determining the sufficiency of the evidence to sustain a criminal conviction, we must consider the evidence, direct and circumstantial, and all reasonable inferences arising therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976). Viewed thusly, the evidence introduced at trial discloses the following.

On or about December 21, 1970, appellant became involved in an altercation with the decedent, Willie Frieson, at the Cinderella Bar in Philadelphia. Frieson struck appellant, causing him to bleed. Thereafter, appellant threatened the life of Frieson.

Several weeks later, on the evening of January 14, 1971, both Frieson and appellant were again present in the same bar. Appellant was in the company of Ronald Merryweather. Appellant asked Merryweather to get him something, whereupon Merryweather left the bar and returned five or ten minutes later. Appellant asked Merryweather, "Did you get what I asked?" In response, Merryweather handed a gun to appellant. Later that evening, Merryweather was seen in the possession of another gun.

At about 2:00 a. m., Frieson left the bar in the company of James Johnson. Shortly thereafter, appellant and Merryweather left the bar and encountered Frieson and Johnson. Frieson complied with Merryweather's request to "come

1. This was appellant's second trial. He had a jury trial in May 1972, which ended in a guilty verdict. On February 9, 1976, a three judge panel of the lower court granted appellant's motion for a new trial.

here." Merryweather waved a gun in Frieson's face. Johnson then left the scene and went home, while appellant, Merryweather, and Frieson walked off in a different direction, around a corner and out of sight. Soon thereafter, three shots were heard by people in the vicinity. Later that morning, Frieson's body was found in the backyard of a nearby home. He had been shot twice in the head and once in the neck by one .32 caliber and two .22 caliber bullets.

■ Appellant specifically argues that the Commonwealth failed to meet its burden of proving the existence of unlawful agreement or confederation between appellant and others, and also that appellant participated in a direct manner in the actual homicide charge. We do not agree. The evidence presented at trial was sufficient to support a verdict of guilty of conspiracy and, consequently, the verdict of murder in the first degree which resulted therefrom.

■ The Commonwealth is not required to establish the existence of a conspiracy by direct proof of an explicit or formal agreement. It is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence. *Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973). While more than a mere association must be shown, a conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

■ The aforestated evidence established that appellant had a motive to kill the decedent and inferentially established a conspiracy. The evidence established that appellant acted in concert with Merryweather and that, together, they planned to kill and, indeed, did kill the decedent. Once the conspiracy had been established, it became irrelevant, for purposes of determining criminal liability, whether appellant or his friend actually shot the decedent, because a co-conspirator is criminally responsible for the acts of his confederate committed in furtherance of the common design. *Com-*

*monwealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1973).[2] Therefore, once the conspiracy had been established, appellant was liable for the fatal shots.

■ Appellant next contends that the lower court erred in refusing to suppress two .22 caliber bullets found in his residence because the warrant authorizing the search failed to establish probable cause to justify the search. In particular, appellant argues that there is no mention of the premises in the search and seizure warrant outside of the line identifying it as the premises to be searched. This claim is without merit.

The affiant recounted the facts obtained from several eyewitnesses which supported his conclusion that appellant had participated in the shooting death of the decedent.[3] Reliability of the information was established because the informants were eyewitnesses. *Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975). Notably included in the warrant was the eyewitness account of appellant's possession of a handgun shortly before appellant's confrontation with decedent, followed by the sound of gunshots.

■ An affidavit upon which a search warrant is sought must be read with common sense. Technical requirements of elaborate specificity are inappropriate. Furthermore, the resolution of marginal cases in this area should be largely determined in favor of the warrant's validity. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Muscheck,* 460 Pa. 590, 334 A.2d 248 (1975); *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971).

**2.** It is worth noting, however, that bullets from two different weapons, a .22 caliber gun and a .32 automatic, were removed from the decedent's body, tending to prove that both appellant and Merryweather shot the decedent.

**3.** The affiant stated that the decedent had struck the defendant in a fight several weeks earlier and that, on several occasions, the defendant had threatened to "get," the decedent. The affiant also detailed the manner in which the defendant obtained a handgun on the night of the murder and confronted the decedent soon after, which confrontation was followed shortly by the sound of gunshots and the discovery of the decedent's body later that morning.

Based on this guideline, it is our view that a common sense reading of the affidavit involved clearly establishes that the affiant had a reasonable basis from which to conclude that appellant probably had secreted the instrumentalities of the crime in his residence. Appellant had already been arrested on January 18, 1971, at which time instrumentalities of the crime were not found on his person. The warrant itself indicates that the crime had been committed four days prior to appellant's apprehension. The most reasonable conclusion to be drawn from the aforestated facts was that appellant would have gone home at some point during the several days following the crime and prior to his arrest, and would have secreted the instrumentalities in his residence at such time. In dealing with probable cause we deal with probabilities; these are the factual and practical considerations of everyday life in which reasonable men act. (cites omitted.) *Commonwealth v. Hall*, 456 Pa. 243, 317 A.2d 891 (1974). Based on the facts set forth in the warrant, we find that the standard of probable cause was clearly met.

The third argument that appellant raises is that the Commonwealth did not lay an adequate foundation for the introduction into evidence of two .22 caliber bullets found in appellant's home. Appellant has waived this claim by failing to object to the introduction of the bullets at trial, and thus failing to preserve this issue for appeal. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). Appellant has also waived the issue of the alleged lack of foundation by failing to raise it in his post-verdict motions. Pa.R. Crim.P. 1123(a); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). "We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal [in] this Court." (cites omitted.) *Commonwealth v. Agie*, 449 Pa. 187, 189, 296 A.2d 741 (1972).

Appellant's final argument is that the trial court erroneously charged the jury in its supplemental charge regarding the culpability of conspirator. Appellant raised

no objection to the court's use of the term "terrified onlooker" at the time the charge was given, and has precluded review here.[4]  Pa.R.Crim.P. 1119(b);  *Commonwealth v. Blount*, 466 Pa. 370, 353 A.2d 400 (1976);  see also *Commonwealth v. Clair*, supra;  *Commonwealth v. Agie*, supra.

Judgment of sentence affirmed.

4.  Indeed, defense counsel implicitly approved of the court's use of the term in stating to the court, following the supplemental charge: They (the jury) have to conclude first that he (the appellant) was there before they can conclude that he was a terrified onlooker