417 A.2d 1192

COMMONWEALTH of Pennsylvania

v.

**Jeffrey KNOX, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Jan. 4, 1980.

564

Allan M. Tabas, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, for Commonwealth, appellee.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

WIEAND, Justice:

Jeffrey Knox was convicted by a jury of the offense of criminal conspiracy arising from a prison rape. Post trial motions were denied, and this appeal was taken from the judgment of sentence. We affirm.

Appellant contends that the evidence is insufficient to support his conviction. In determining the sufficiency of the evidence, this Court is required to consider the evidence in the light most favorable to the Commonwealth, accepting all reasonable inferences which the jury could have drawn therefrom. *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

■ The essence of every criminal conspiracy is a common understanding, no matter how it came into being. *Commonwealth v. Minnich*, 236 Pa.Super. 285, 288, 344 A.2d 525, 526 (1975). A conviction for conspiracy may not rest on mere presence at the scene of the crime, with knowledge that a crime is being committed. However, a "conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). Furthermore, circumstances which are insufficient to support a conviction of conspiracy when each stands alone may be sufficient to support a conviction when considered in their totality. *Commonwealth v. Clark*, 256 Pa.Super. 97, 101, 389 A.2d 619, 621 (1978).

■ The evidence in the instant case established that on the night of April 4, 1977, appellant, together with Hadley Nelson and John Hunter who were fellow inmates at Holmesburg Prison, were in discussion about Frederick Lee, another prisoner in the same cell block. The three agreed that Lee was "doing something", and they decided to go to his cell to "check it out". As the prisoners entered Lee's cell, one of them stated, "Hey man, you's a girl." Appellant struck Lee in the face, and the two others quickly joined in striking Lee about his face and body. When Nelson exclaimed, "Man you're going to give up some sex", appellant threw Lee on the bed, and Hunter jumped on Lee's back. Nelson then penetrated Lee anally while appellant and Hunter watched in laughter. The three prisoners then left the cell, only to return in ten minutes, when Nelson sexually assaulted Lee once again.

These circumstances depicted clearly a concerted, sexual assault committed by three prisoners on a fourth. The evidence was sufficient to permit a finding of a criminal conspiracy. Cf. *Commonwealth v. Johnson*, 485 Pa.Super. 328, 402 A.2d 507 (1979).

■ Appellant contends that the trial court should have suppressed the victim's identification testimony because of a taint allegedly caused by an earlier prison identification. On the morning following the rape, a prison official, who had received a tip from a prison informant, took Lee from cell to cell in an effort to identify his attackers. Lee identified Nelson and Hunter in a positive manner, but with respect to appellant, he said, "I think he's one of them." Because of Lee's apparent uncertainty, appellant was not removed from the general prison population. Later on the same day, during lunch, Lee was taken by the same official to observe the prisoners as they passed through the food line. On this occasion, Lee identified appellant as the third attacker.

Contrary to appellant's assertion, the trial court found that Lee had not been shown photographs of appellant prior to the lunch time identification. The evidence supports this finding, and we will not disturb it. See: *Commonwealth v. Williams*, 476 Pa. 344, 382 A.2d 1202 (1978); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). Similarly, the trial court found, based on substantial evidence, that Lee's identification of appellant had not been the product of suggestive tactics on the part of prison officials. This, too, will not be disturbed.

■ Appellant complains that he should have had counsel during the time in which he was being observed in the food line. The right to counsel, it has been held, attaches only at the time of arrest. *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974). Although a person already in custody can be "arrested" by the imposition of additional restraints upon his liberty, see: *Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 427, 321 A.2d 637, 639–640 (1974), in the instant case, additional restraints had not been placed upon appellant until after the lunch time identification. Consequently, appellant was not entitled to counsel while he walked through the food line, and there was no constitutional defect in the procedure by which he was identified by his victim.

During the pre-trial suppression hearing, it was developed that an unidentified prisoner had initially notified prison officials of the rape and had named appellant, Hunter, and Nelson as the attackers. Appellant's counsel asked that the identity of the informant be disclosed. The Commonwealth told the court that it had already disclosed the names of all eyewitnesses. The court, therefore, did not require disclosure of the informant. Although appellant has advanced no reason for believing the informant to have information helpful to the defense, he argues that the informant's identity should have been divulged. We disagree.

There is no fixed rule with respect to disclosure of an informant. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Commonwealth v. Carter*, 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639, 645–46 (1957). See also: *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 406, 312 A.2d 434, 437 (1973). Before disclosure of an informant's identity will be required, ". . . more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense. . . . Although the defendant plainly cannot be expected to show that such information will actually be helpful to his defense, the record should at least suggest a reasonable possibility that the information might be helpful, so that it would be unfair to withhold it." *Commonwealth v. Herron*, 475 Pa. 461, 466–67, 380 A.2d 1228, 1230 (1977). See also: *Commonwealth v. Pritchett*, supra, 225 Pa.Super. at 407–08, 312 A.2d at 438.

In the instant case, the record does not reveal a reasonable possibility that the informant would be able to exonerate the appellant. We do not know if the informant

was an eyewitness or the recipient of hearsay information. We do know that the prison informant who brought the rape to the attention of the prison authorities identified appellant as a participant. We also know that appellant was identified positively by the victim of the rape and by John Hunter. Finally, we know that the defense was given the opportunity to interview all prisoners present in the cell block on the night of the crime to ascertain if any were eyewitnesses. The need to protect informants who communicate information of prison misconduct is well known. On balance, therefore, we find no abuse of discretion inherent in the trial court's refusal to require disclosure of the identity of the prison informant. See and compare: *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972).

Appellant next complains that the trial judge participated excessively in the trial interrogation of the victim. A trial judge has a right, and at times, the duty to interrogate witnesses. Questioning from the bench, however, should not show bias or feeling nor be unduly protracted. *Commonwealth v. Seabrook*, 475 Pa. 38, 45, 379 A.2d 564, 567 (1977); *Commonwealth v. Watts*, 358 Pa. 92, 96, 56 A.2d 81, 83 (1948). The primary reason for restricting the trial judge's questioning is so that the jury will not conclude that he has already made up his mind on the question of the defendant's guilt. *Commonwealth v. Seabrook*, supra. Our review of the questions asked of the victim disclose an impartial and unemotional attempt by the trial judge to clarify the testimony of an inarticulate witness. This interrogation was not only harmless but, in fact, produced answers favorable to the appellant. It was not error and does not require a new trial.

Finally, appellant complains that the trial judge refused to give a submitted "mere presence" point for charge to the jury. Neither the record nor appellant's brief informs us of the precise language requested, so that it is difficult to ascertain whether the submitted point contained an accurate statement of law.

In any event, there was no error in the trial court's refusal to give a "mere presence" charge in the instant case. Here, appellant was not an innocent bystander. This is demonstrated by the evidence which showed, first, that appellant had been with Hunter and Nelson when the three agreed to go to Lee's cell. It also showed that appellant's presence in Lee's cell was neither invited nor authorized. Finally, the evidence showed that appellant participated actively in the physical assault and then stood by and laughed while Lee was forced to submit to Nelson's sexual advances.

These circumstances were akin to the situation in which a defendant proceeds with a rapist to enter the apartment of a victim and then assists to subdue the victim and remains to watch as his companion has intercourse with the victim. Under such circumstances a jury could reliably infer a common understanding that the crime of rape was to be committed and that a corrupt confederation had been formed. A defendant's presence, under such circumstances, would be inconsistent with innocence, and it would be misleading and incorrect to instruct a jury in a contrary manner.

Appellant's reliance upon *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977) is misplaced. In that case, the female rape victim had willingly accompanied two men to a motel room which had been rented to friends. There they spent an hour and one-half smoking marijuana, talking, watching television and joking. Their presence in the room was authorized and, without more, did not evidence an agreement to commit a crime. Ultimately, the victim was assaulted by one of the two men while defendant sat on the next bed. This Court held that the defendant was entitled to a charge that mere presence, without more, was insufficient to prove that defendant had agreed to aid and abet his companion who committed the rape.

In the instant case, appellant's status was not equivocal. He had entered Lee's cell uninvited, together with Hunter and Nelson, where he actively participated in assaulting Lee, and then stood by, laughing, while Lee was penetrated

anally. Under these circumstances, the trial court did not err in refusing to charge that appellant's presence was insufficient to permit an inference of an unlawful confederation. See: *United States v. Erb*, 543 F.2d 438, 446–47 (2nd Cir. 1976) cert. denied 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976).

The judgment of sentence is affirmed.