439 A.2d 774

**COMMONWEALTH of Pennsylvania,**

v.

**Easter FEICK, Appellant.**

Superior Court of Pennsylvania.

Submitted May 22, 1981.

Filed Jan. 5, 1982.

John H. Corbett, Jr., Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

James H. McLean, Pittsburgh, for participating party.

Before PRICE, MONTGOMERY and VAN der VOORT, JJ.

MONTGOMERY, Judge:

This appeal arises from the adjudication of appellant as delinquent pursuant to the Juvenile Act,[1] upon a finding of contempt by the Honorable Patrick R. Tamilia. For the following reasons, we vacate the order of the lower court and reverse judgment of sentence.

The record evinces that appellant, who at the time of adjudication was sixteen years of age, suffered from physical and psychological parental abuse. The lower court assumed jurisdiction over her on January 15, 1980. A hearing was held on January 23, 1980, at which time she was found to be dependent under the Juvenile Act,[2] and placed under the supervision of Children and Youth Services at McIntyre Shelter[3] pending evaluation and/or placement. Appellant ran away from the shelter and her whereabouts were unknown for several months. When located, appellant was detained at Shuman Center, a secure facility designed for delinquent children, while she awaited the filing and disposi-

1. Act of July 9, 1976, P.L. 586, No. 142 § 2, effective June 27, 1978, as amended April 28, 1978, P.L. 202, No. 53, § 29, effective June 27, 1978. 42 Pa.C.S. § 6301 et seq.

2. 42 Pa.C.S. § 6302.

3. The term "shelter" is used to denote a physically unrestricted facility. 42 Pa.C.S. § 6302.

tion of a delinquency petition charging her with violation of a court order in running away from McIntyre Shelter. As stated earlier, the lower court found her in contempt and adjudicated her delinquent.

The sole issue for our consideration is whether the juvenile court had a sufficient basis for adjudicating appellant delinquent. Our court was recently faced with this question as a matter of first impression. *Interest of Taessing H.*, 281 Pa.Super. 400, 422 A.2d 530 (1980). The majority in *Taessing* found that the juvenile court lacked jurisdiction to adjudicate a child charged with contempt delinquent. Though two members of the three judge panel agreed to the disposition in *Taessing*, their rationales differed. The author of the majority opinion deduced that the contempt, which resulted from a runaway incident the same as that herein, was civil and not criminal. It was, therefore, erroneous to adjudicate the juvenile delinquent. The concurring judge based his agreement with the majority's disposition on the premise that though the contempt was criminal, the underlying conduct was not a crime under the Juvenile Act, and, therefore, could not be the basis for an adjudication of delinquency. We agree with and are bound by the majority opinion in *Taessing*.

In order for a juvenile to be found delinquent, the contempt for which he or she is cited must be a crime under the law of this Commonwealth. 42 Pa.C.S. § 6302. There are two classes of contempt, civil and criminal, which are distinguishable according to the prevailing purpose and objective of the court's order. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980); *In re "B".*, 482 Pa. 471, 394 A.2d 419 (1978). A citation is for criminal contempt if the court's purpose was to vindicate the dignity and authority of the court and to protect the interest of the general public. If the purpose of the citation is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of the litigant or a private interest, it is civil contempt. *Commonwealth v. Charlett*, 481 Pa. 22, 27, 391 A.2d 1296, 1298 (1978); citing

*Woods v. Dunlop,* 461 Pa. 35, 40 n.2, 334 A.2d 619, 622 n.2 (1975).

    The court's primary purpose in the instant case was apparently to coerce appellant to remain under supervised care to facilitate her placement and treatment. The goal of the court was not simply punishment, as is evidenced by the opinion of the juvenile court. Judge Tamilia stated that he believed that running away placed Easter in great personal danger. He, therefore, felt that the interest of the child required the temporary security of the detention center to achieve the goals of placement and protection. Such an approach is consistent with the fact that a purpose of punishment is beyond the function of a juvenile court judge. His sole function is protective, seeking the treatment, reformation and rehabilitation of those children brought before him. *In re Garman,* 250 Pa.Super. 54, 378 A.2d 449 (1977); *Commonwealth v. Mitchell,* 283 Pa.Super. 455, 424 A.2d 897 (1981).

Easter's conduct which led to the finding of contempt, leaving shelter care without permission, did not of itself constitute an offense under our Crimes Code.[4] A charge of escape,[5] the closest analogous crime, would not lie against appellant, as she was merely classified as a dependent child at the time she ran away from the shelter care facility. Specifically, she had not been alleged or found to be delinquent. The act of running away was, therefore, civil in nature and indicative of contempt which was characteristically civil. *Interest of Taessing H.,* supra, 281 Pa.Super. at 411, 422 A.2d at 535. Civil contempt is primarily used for some remedial purpose and is clearly not a crime in our Commonwealth. It, therefore, cannot properly support an adjudication of delinquency.

**4.** 18 Pa.C.S. § 101 et seq.

**5.** 18 Pa.C.S. § 5121:
    "(a) Escape. A person commits an offense if he unlawfully removes himself from official detention...
    (e) ... the phrase official detention means ... detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent..."

The error of the lower court's action is further compounded by the fact that the act of running away from shelter care is a status offense,[6] which renders the instant adjudication of delinquency beyond the authority of the juvenile court. In promulgating the amendments to the Juvenile Act, our General Assembly determined that status offenders should not be classified as delinquent children. The result was the reclassification of status offenses as dependency matters as opposed to delinquent acts. *Compare*, Act of December 6, 1972, P.L. 1464, No. 333, § 2, *with*, Act of August 3, 1977, P.L. 155, No. 41, § 1.[7] Though the present Act, in and of itself, does not contain specific language as to such a change, when compared to the prior Act, the legislative intent to separate status offenses and delinquent acts is clear. Specifically, prior to 1977, status offenses such as truancy, running away, and ungovernability were classified under the Juvenile Act as delinquent acts. The reclassification effected by the 1977 amendments is embodied in the definition of a dependent child. See, 42 Pa.C.S. § 6302(5), (6), (8), (9). A careful comparative reading of the Acts of 1972 and 1977, leaves no doubt as to the intent of the legislature. As status offenses are not to be considered delinquent acts, the commission of such an offense is not sufficient criminal conduct which could lead the juvenile court to find a status offender delinquent. Our characterization of the contempt as civil herein and in *Interest of Taessing H.*, supra, which is buttressed by our categorization of the conduct in question as a status offense, results in a

6. A status offense is conduct which if engaged in by an adult would not be legally prohibited. *Interest of Taessing H.*, 281 Pa.Super. 400, 408, 422 A.2d 530, 533 (1980).

7. The Act of December 6, 1972 was repealed by the Act of April 28, 1978, known as the Judiciary Act Repealer Act (JARA). Prior to the promulgation of JARA, the Act of July 9, 1976, enacted a Judicial Code in the form of a new Title 42 of Pennsylvania Consolidated Statutes which includes the Juvenile Act. The effective date of the Act of 1976 was delayed until the effective date of JARA. In the interim, the Juvenile Act was amended by the Act of August 3, 1977, which amendments included the reclassification of status offenses as dependency matters. The Act as amended in 1977 is substantially our present Juvenile Act.

determination that the juvenile court erroneously adjudicated appellant delinquent.

Accordingly, we vacate the adjudication of delinquency and disposition based thereon as beyond the authority of the juvenile court, and this matter is remanded to the juvenile court for appropriate disposition consistent with this opinion. We relinquish jurisdiction.

PRICE, J., did not participate in the consideration or decision of this case.