452 A.2d 873

**COMMONWEALTH of Pennsylvania**

v.

**David MARTELL, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1982.

Filed Nov. 19, 1982.

2

Robert G. Kochems, Grove City, for appellant.

Charles Hersh, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was found guilty of escape, conspiracy to commit escape, unauthorized use of a motor vehicle and conspiracy to commit unauthorized use of a motor vehicle by the court sitting non-jury.[1] The charges arose out of an incident on February 25, 1980, when McKee overpowered the night matron at the Mercer County Juvenile Court Center, locked her into a room, and escaped with five other juveniles, including appellant, Martell by taking the matron's car. Appellant was tried together with codefendant McKee. Appellant Martell raises five issues on this appeal; we will address them seriatim.

[1]. A co-defendant, Kenneth Harry McKee, was convicted of similar charges as well as aggravated assault and conspiracy to commit aggravated assault at No. 102 Mercer County, Criminal 1980. He has filed a separate appeal at No. 184 Pittsburgh, 1981. We have filed on this date an Opinion in that case.

I. DID THE TRIAL COURT ERR IN ADJUDGING THE APPELLANT GUILTY OF CRIMINAL ESCAPE AND CONSPIRACY TO ESCAPE IN THAT THE EVIDENCE PRESENTED BY THE COMMONWEALTH FAILED TO SHOW THAT THE APPELLANT WAS UNDER OFFICIAL DETENTION AS IS REQUIRED BY THE STATUTE?

Escape is defined by the Crimes Code, 18 Pa.C.S. § 5121(a) as:

Escape—a person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

Subsection (e) further defines official detention as:

Definition—as used in this section, the phrase "official detention" means arrest, detention in any facility for custody of persons, under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation, parole, or constraint incidental to release on bail.

Appellant cites our decision in *Commonwealth v. Markle,* 245 Pa. Superior Ct. 108, 113, 369 A.2d 317, 319 (1976), where we said, that: "In order to prove the charge against appellant of attempted escape, the Commonwealth had to prove that appellant was held in 'official detention' ..."; and went on to say that in the *Markle* case: "the jury or judge has a right to know the reason for which the defendant is being held ...."

In the present case the transcript of the non-jury trial before Judge Mannix does not contain specific evidence as to the precise circumstances and reasons for appellant's detention in the Mercer Juvenile Court Center, or, for that matter precisely what was the Juvenile Court Center. There appears to be some merit to appellant's assertion. In *Com-*

*monwealth v. Feick*, 294 Pa. Superior Ct. 110, 439 A.2d 774 (1982) and *In the Interest of Tasseing H.*, 281 Pa. Superior Ct. 400, 422 A.2d 530 (1980) this court held that leaving a non-secure shelter facility, did not make a merely dependent child an escapee under the Crimes Code. Accordingly if appellant had not been adjudicated a delinquent or was not awaiting a delinquency hearing then he could not have attempted an escape within the meaning of the Crimes Code.

The trial court, in its opinion, took note of Judge Stranahan's findings of fact that appellant Martell had been adjudicated delinquent and was awaiting transfer to another facility at the time of the alleged escape. Courts may take judicial notice of the record and prior proceedings in the case in which they are currently involved. *Wagner's Appeal,* 143 Pa. Superior Ct. 407, 17 A.2d 662 (1940). *See also,* Wharton's Criminal Evidence, § 63 (13 Ed. 1972) and 9 Wigmore Evidence § 2579 (Chadbourn rev. 1981). At the same time a court may not support an adjudication of guilt with evidence not part of the trial record. *Commonwealth v. Wasiuta,* 280 Pa. Superior Ct. 256, 421 A.2d 710 (1980).[2]

The Commonwealth is however also entitled to any reasonable inferences which may arise from the evidence presented. *Commonwealth v. Markle,* supra. The testimony elicited at trial demonstrates that the juveniles at the Mercer County Juvenile Center were under secured supervision. They were locked in their rooms or cells at night and any exit to the outside world was barred by locked doors. Furthermore, arrangements had been made with various police authorities for a periodic check-in by the Center's personnel to insure that no incidents would arise without the authorities being notified. The nature of this security is demonstrated by the fact that the juveniles had engaged in a forcible escape and did not merely walk out or run away as

2. Due to our resolution of this issue we need not resolve the apparent contradiction between *Wagner's Appeal* and *Wasiuta.*

the case was in *Feick,* supra, and *Interest of Tasseing H.,* supra.

We must also look to the legislatively created scheme for housing children who come under the supervision of the juvenile court. A child alleged to be delinquent may be housed in one of four alternate placement environments, including a detention center. 42 Pa.C.S. § 6327(a). A dependent child may be housed in one of three of the same placements as a delinquent child, but may *not* be sent to a detention center. Id. (e). The legislature has further defined a "shelter care", as one of the three available options for a dependent child, as a physically *unrestricted* facility. Id. § 6302. A similar statutory definition has not been provided for a "detention center." Nonetheless the courts and others involved in the placement of dependent and delinquent children have used the unrestricted/secure dichotomy to distinguish a shelter facility from a detention facility. For an example, see, *Interest of Tasseing,* supra.

With the above in mind we find that a fact-finder could reasonably infer that appellant escaped from "official detention". Throughout the questioning of the various witnesses frequent references were made without objection to the Mercer County Juvenile Center as a detention center. (N.T., pp. 2, 3, 10, 11, 18, 20, 27, 28, 30, 34, 35, 36, 44, 45 and 46). As only juveniles petitioned to be delinquent or those actually found to be delinquent, may be housed in a detention center, the court could properly assume that appellant was under official detention for law enforcement purposes.

II. DID THE TRIAL COURT ERR IN ADJUDGING THE APPELLANT GUILTY OF CONSPIRACY TO COMMIT AN ESCAPE IN THAT THE COMMONWEALTH FAILED TO SHOW THAT THE APPELLANT ENTERED INTO AN AGREEMENT WITH ANOTHER TO ESCAPE AND THERE WAS FAILURE TO SHOW AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY?

The Commonwealth's evidence did not explicitly demonstrate that appellant had entered into agreement prior to the escape. A prosecution witness, one of the other escapee-detainees testified that he was unsure of appellant-Martell's participation in the planning stage of the scheme. (N.T., pp. 39, 48).

While a conviction for conspiracy may not rest on mere presence at the scene of the crime, with knowledge that a crime is being committed, a conspiracy may be inferred from the relationship, conduct, and circumstances of the parties. *Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979); *Commonwealth v. Knox*, 273 Pa. Superior Ct. 563, 417 A.2d 1192 (1980). Here the circumstantial evidence shows that while the record is unclear as to appellant's early participation in the planning, he did confer with the main actor, McKee, a half an hour before the assault on the matron. Appellant after being released then went about releasing other detainees. We find such conduct in the context of this case to be sufficient to show beyond a reasonable doubt that appellant was an active participant in the conspiracy to escape.

III. & IV. DID THE TRIAL COURT ERR IN ADJUDGING THE APPELLANT GUILTY OF UNAUTHORIZED USE OF AN AUTOMOBILE AND CONSPIRACY TO COMMIT UNAUTHORIZED USE OF AN AUTOMOBILE IN THAT THE COMMONWEALTH FAILED TO SHOW THAT THE APPELLANT WAS THE OPERATOR OF THE AUTOMOBILE IN QUESTION AND THAT APPELLANT HAD ENTERED INTO AN AGREEMENT WITH ANOTHER TO USE THE CAR?

Originally, the escape plan contemplated escape by foot (N.T., p. 46); but after the unlocking of the various cells it was decided that the matron's car would be used to effectuate the escape (N.T., p. 46); appellant did not actually drive the car from the detention center though he was a passenger. (N.T., p. 32); when the car was disposed of, it is

unclear on the record whether appellant was then driving the vehicle. (N.T., p. 32)

It is a fundamental principal of criminal law that when a conspiracy is shown to exist, then each confederate is criminally responsible for the acts of his associates committed in furtherance of the common scheme. *Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Jefferson,* 271 Pa. Superior Ct. 199, 412 A.2d 882 (1979). With this principle in mind we find it unnecessary to distinguish driver from passenger. As we found earlier in this opinion that a conspiracy to escape existed, all the conspirators share in the criminal responsibility of the unauthorized use of the car as such was committed in furtherance of the escape.

Similarly, we have no difficulty in finding that a conspiracy for unauthorized use was demonstrated. In the context of the broader escape conspiracy, we find that the potential escapees had reached a consensus that the matron's car would be used in their escape. (N.T., p. 36)

V. DID THE PRE–TRIAL HEARING JUDGE ERR IN TRANSFERRING THIS MATTER FROM JUVENILE COURT TO ADULT CRIMINAL COURT IN THAT THE TRANSFER FROM JUVENILE COURT TO ADULT COURT CONSTITUTED AN ABUSE OF DISCRETION?

Transfer of juveniles to adult court is controlled by the Juvenile Act found in 42 Pa.C.S., Section 6355, which is a substantial re-enactment of prior law found in 11 P.S., Section 50–325. Section 6355(a)(4) of the present Juvenile Act requires that a juvenile may be transferred to adult court only if the court finds that all of the following factors exist:—

(a) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities. In determining this, the court may consider age, mental capacity, maturity, previous records and probation or institutional reports;

(b) That the child is not committable to an institution for the mentally retarded or mentally ill;

(c) That the interest of the community requires that the child be placed under legal restraint or discipline, or that the offense is one which would carry a sentence of more than three (3) years if committed as an adult.

President Judge Stranahan filed findings of fact and amended findings of fact[3] supporting the transfer of this case to the Criminal Division. Appellant was 16 years of age at the time of the hearing. The court found a prima facie case had been made out against appellant-Martell. The pending charges included acts that would be felonies if committed by an adult and carried a sentence of more than three (3) years. Appellant had a prior juvenile history including burglary, drug violation, under-age drinking and unlawful operation of a vehicle. He had a troubled school history and proved to be unmanageable when placed with relatives. He had a history of running away, escapes and escape attempts. As a result of the current escape attempt, three different placement centers refused to take him. It was his probation officer's opinion that he had not responded to any of the programs afforded him. The transferring court went on to take note of the details of the escape currently under review and concluded that the interest of the community required appellant be placed under legal restraint. The court found appellant not committable to an institution for the mentally retarded or ill.

 Absent the court's gross abuse of its broad discretion in the transferring of juveniles to the Criminal Division we will not vacate a court's certification order. *Commonwealth v. Stokes,* 279 Pa.Superior Ct. 361, 367, 421 A.2d 240, 243 (1980); *Commonwealth v. Harrod,* 260 Pa.Superior Ct. 312, 394 A.2d 567 (1978). Appellant argues that it was not demonstrated in the court below that he was not amendable

---

**3.** Apparently the "findings of fact" filed originally confused the juvenile backgrounds of the two defendants.

to treatment within the juvenile system. We disagree. The court in compliance with subsection (a) of the applicable statute found: that a number of possible placements would not accept appellant; and that his probation officer found he was unresponsive to the programs afforded him. In light of appellant's juvenile record the court found him unamenable to treatment in the juvenile system. We can find no gross abuse of the court's discretion in this matter.

Judgment of sentence affirmed.

BECK, J., files a concurring and dissenting statement.

BECK, Judge, concurring and dissenting:

While I agree with the majority's determination that Appellant's case could properly be transferred under Section 6355 of the Juvenile Act ("Act"), 42 Pa.C.S. § 6355, to an "adult" court, I disagree with the majority's view that Appellant's constitutional right to a fair trial as an "adult" was adequately protected in this instance where the trial court took judicial notice of the factual findings of the transfer hearing judge and incorporated same into its evaluation of Appellant's guilt.

A transfer hearing pursuant to the Act does not possess all the safeguards of an "adult" court trial. Although the Act does guarantee, *inter alia,* the right to counsel (42 Pa.C.S. § 6337), the right to cross-examine witnesses (42 Pa.C.S. § 6338),[1] and the right against self-incrimination (42 Pa.C.S. § 6338), the Act specifically denies the right to a jury. "Hearings under the [Act] shall be conducted by the court *without a jury,* in an informal but orderly manner .... " Section 6336 of the Act, 42 Pa.C.S. § 6336 (emphasis added). *See McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *Commonwealth v. McNaughton,* 252 Pa.Super.Ct. 302, 381 A.2d 929 (1977).

---

1. Juveniles also have the right to confront their accusers. *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

The purpose of the hearing is for the Commonwealth to make a prima facie case not prove all the elements of the crime beyond a reasonable doubt. Additionally, the defendant at a prima facie hearing does not expect to develop fully whatever defense he may have.

Moreover, the purpose and scope of a transfer hearing differ markedly from those of a criminal court trial. Whereas a criminal court trial addresses the merits of both the Commonwealth's and the accused's positions, Section 6355(a) of the Act states that "[a]fter a petition has been filed alleging delinquency based on conduct which is designated a crime . . ., the court *before hearing the petition on its merits* may rule that [the Act] is not applicable . . . and transfer the offense . . . to . . . a judge of the court assigned to conduct criminal proceedings . . . ." (Emphasis added.) A transfer must be supported by, *inter alia,* a finding "that there is a *prima facie case* that the child committed the delinquent act alleged." 42 Pa.C.S. § 6355(a)(4)(i) (emphasis added).[2]

The transfer hearing did not offer Appellant the opportunity to trial by jury. The standard of proof of the crime at the transfer hearing was not beyond a reasonable doubt but was limited to the establishment of a prima facie case. I therefore would hold that the trial court's adoption of the factual findings of the transfer hearing judge denied Appellant his basic constitutional right to a fair trial including his right to a jury trial and to proof of guilt beyond a reasonable doubt.

I would accordingly reverse and remand for a new trial not inconsistent with this view.

**2.** Although Section 6341 of the Act, 42 Pa.C.S. § 6341, provides that a *finding of delinquency* must be based "on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent," Section 6355 which governs transfers to "adult" court, does not contain a similar prerequisite for a *finding of inapplicability* of the Juvenile Act but merely requires proof of a prima facie case in order to effectuate a transfer to "adult" court.