475 A.2d 123

**In the Matter of James WELSH, a minor.**

**Appeal of James WELSH.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1983.

Filed March 30, 1984.

Reargument Denied June 5, 1984.

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Dana S. Jones, Assistant District Attorney, Erie, for participating party.

Before CAVANAUGH, JOHNSON and MONTGOMERY, JJ.

CAVANAUGH, Judge:

In this case, the appellant, James Welsh, had a history of juvenile delinquency and had been placed in several programs. His history included elopement from several of these programs.

On April 27, 1981, the court below entered a further finding of delinquency and placed James under the care and supervision of St. Michael's School for Boys, an institution which accepts juvenile males who are delinquent or dependent and has various vocational and technical programs for its residents. The residents are not physically confined at the school which operates under the supervision of the Archdiocese of Scranton and is licensed by the Department of Public Welfare. It is not a "secure" facility.[1]

The appellant was granted a temporary leave for the Easter holidays in April, 1982, and did not return to the

---

1. That is, it is not a detention (secure) facility, but rather a "shelter care" facility. The Act defines "shelter care" as the "[t]emporary care of a child in physically unrestricted facilities." 42 Pa.C.S. § 6302.

school on the designated date. He was subsequently charged with commission of escape in violation of the Crimes Code, 18 Pa.C.S. § 5121(a) and the court found him to have committed a delinquent act. He was adjudicated delinquent by order of May 25, 1982. An appeal has been taken from this order.

Appellant contends that he cannot be charged with "escape" from St. Michael's School as he was not in "official detention" since St. Michael's is not a physically restricted facility. 18 Pa.C.S. § 5121 in pertinent part provides:

§ **5121. Escape**

(a) **Escape.**—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

.   .   .   .   .

(e) **Definition.**—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

■ Counsel for the appellant agrees that St. Michael's was a proper facility for detaining James under the Juvenile Act and states at page 9 of his brief that "St. Michael's School is a physically unrestricted placement which attempts to provide the supervision, care and rehabilitation that the Juvenile Act requires."[2]

2. The Juvenile Act, 42 Pa.C.S. § 6301(b)(2) states:

(b) **Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

.   .   .   .   .

(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

James was on leave from St. Michael's with approval but failed to return from the temporary leave. Under modern law, escape is not limited to the stereotyped concept of a prison break or going over the wall. *Commonwealth v. Brown,* 261 Pa.Super. 240, 396 A.2d 377 (1978), decided that one who was on a work release program and failed to return from a temporary leave, was in "official detention" and could properly be charged with escape when he failed to timely return. Accordingly, the fact that James was on temporary Easter leave did not prevent him from being in "official detention."

Appellant relies on the case of *In the Interest of Tasseing H.,* 281 Pa.Super. 400, 422 A.2d 530 (1980), in support of his contention that leaving an unrestricted facility could not constitute escape. In *Tasseing H., supra,* the court held that a juvenile *who had not been adjudicated delinquent* but who ran away from an unrestricted facility while awaiting the outcome of a dependency proceeding, could not be adjudicated delinquent on the basis of running away.[3] The court stated at 281 Pa.Super. 407, 422 A.2d 535:

> An unrestricted facility as St. Michael's, is an appropriate facility for placement of a delinquent. The Juvenile Act provides that a dependent child may be placed with any public agency authorized "by law to receive and provide care for the child." 42 Pa.C.S. § 6351. The Act further provides that a delinquent child may be placed with any agency with which a dependent child could have been placed. It also provides in 42 Pa.C.S. § 6352(a)(3) that a delinquent child may be placed in "an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare." 42 Pa.C.S. § 6327 provides that a delinquent may be detained in only one of four types of facilities, one of which is "a licensed foster home or a home approved by the court." This clearly does not contemplate a restricted facility.

3. The court in *The Interest of Tasseing H.,* 281 Pa.Super. 407, 422 A.2d 533 succinctly placed the situation in focus and stated:

> Thus, the general situation with which we are faced is as follows: appellant is brought before the court on a dependency petition; the court commits appellant to the McIntyre Shelter, a physically unrestricted facility, pending placement; and appellant subsequently runs away from the shelter; appellant is then apprehended and detained in Shuman Center, a detention home, while awaiting the filing of a delinquency petition charging contempt of court for

Because appellants were merely classified as dependent children at the time they ran away from the shelter, a charge of escape would not lie against them.

Appellant also relies on *Commonwealth v. Feick*, 294 Pa.Super. 110, 439 A.2d 774 (1982) in which a child found to be *dependent* and who suffered from physical and psychological parental abuse removed himself from the McIntyre Shelter. The court held that the child's running away from an unrestricted shelter facility did not constitute a sufficient basis for adjudicating her delinquent.

Appellant further relies on *State in Interest of M.S.*, 73 N.J. 238, 374 A.2d 445 (1977). In that case, juveniles who were not delinquent eloped from a shelter care facility which was not a secure facility. The Juvenile and Domestic Relations Court found that this constituted escape and adjudicated the juveniles delinquent. The Supreme Court of New Jersey reversed on the grounds that a juvenile who was in need of supervision could not be adjudicated delinquent merely because he ran away from a shelter care facility. The court made a clear distinction between a juvenile in need of supervision, referred to in the opinion as JINS, and delinquents, and stated at 73 N.J. 243, 374 A.2d 447:

Under the statute a delinquent is one who is guilty of serious antisocial conduct which, depending on circumstances, may require detention. On the other hand a JINS is one who has not really committed an offense against society but only against his or her own best interests.

violation of the court's commitment orders; finally, the court adjudicates appellant delinquent. We are confronted in this manner with a question of first impression in this Commonwealth whether a child who absconds from shelter care ordered pursuant to a dependency petition may subsequently be found delinquent on the basis of contempt of court in violating a court order and, thereby, be detained or committed to facilities for delinquent children.

To be found delinquent, a child must have committed a delinquent act,...

These cases involved juveniles who were dependent or for whom dependency proceedings were pending. They are not controlling in the case before us.

In Pennsylvania a dependent child is one who, among other things, is without proper parental care or control, or has been abandoned by his parents or is without parents.[4] On the other hand, a delinquent child is one who is ten years of age or over who has committed an act designated a crime, other than murder and certain summary offenses.[5]

4. The Juvenile Act defines a dependent child as follows, 42 Pa.C.S. § 6302:

"**Dependent child.**" A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals;

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;

(7) is under the age of ten years and has committed a delinquent act;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6); or

(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6).

5. The definition of a delinquent child is found in the Juvenile Act, 42 Pa.C.S. § 6302:

"**Delinquent child.**" A child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation.

A "delinquent act" is defined as follows:

"**Delinquent act.**"

(1) The term means an act designated a crime under the law of this Commonwealth, or of another state if the act occurred in that state, or under Federal law, or under local ordinances.

(2) The term shall not include:

(i) the crime of murder; or

In the instant case, the appellant was adjudicated a delinquent rather than convicted of a felony because he was a juvenile. It would be unrealistic in the extreme to equate a dependent child with one adjudicated delinquent. A delinquent child has committed "a delinquent act" which is defined in the Juvenile Act as an "act designated a crime under the law of this Commonwealth, or of another state if the act occurred in that state, or under a Federal law, or under local ordinances." 42 Pa.C.S. § 6302. This must be compared with a dependent child who most often has committed no offense and is frequently a victim of the wrongdoing of someone else, or is suffering because of events which are completely beyond his control.

The appellant was in "official detention" within the meaning of the Crimes Code when he failed to return from the temporary Easter leave which he was granted. It is immaterial whether the court orders a juvenile adjudicated delinquent to an unrestricted facility as in this case or to a secure facility. The crucial point is not the nature of the facility from which a delinquent escapes, as far as its being secure or unrestricted, but rather whether he is in "official detention." Under the Crimes Code, a juvenile who has been adjudicated delinquent and has been placed in an unrestricted shelter facility under order of the court is in "official detention" as he is being detained in a facility "for custody of persons...found to be delinquent." 18 Pa.C.S. § 5121(e). The Crimes Code makes no distinction with respect to "official detention" between the placement of a delinquent in a secure or unrestricted facility.

In *Commonwealth v. Martell*, 307 Pa.Super. 1, 452 A.2d 873 (1982), a juvenile who had been adjudicated delinquent was found guilty of escaping from the Mercer Juvenile Court Center which was a secure facility, from which the juvenile had engaged in a forceable escape. We held that

(ii) summary offenses, unless the child fails to pay a fine levied thereunder, in which event notice of such fact shall be certified to the court.

the evidence supported the finding of guilty of escape.[6] This case does not in any way run counter to the conclusion that we reach in this opinion, that a juvenile delinquent may escape while on leave from an unrestricted facility. The instant case is one of first impression in this Commonwealth and we hold that a juvenile who has been adjudicated delinquent may be guilty of escape from an unrestricted facility.

Order affirmed.

6. In *Commonwealth v. Martell,* 307 Pa.Super. 5, 452 A.2d 875 (1982), the court stated:

Accordingly if appellant had not been adjudicated a delinquent or was not awaiting a delinquency hearing then he could not have attempted an escape within the meaning of the Crimes Code. The court also discussed the distinction between facilities for dependent and delinquent children at 307 Pa.Super. 6, 452 A.2d 875:

A child alleged to be delinquent may be housed in one of four alternate placement environments, including a detention center. 42 Pa.C.S. § 6327(a). A dependent child may be housed in one of three of the same placements as a delinquent child, but may *not* be sent to a detention center. Id. (c). The legislature has further defined a "shelter care", as one of the three available options for a dependent child, as a physically *unrestricted* facility. Id. § 6302. A similar statutory definition has not been provided for a "detention center." Nonetheless the courts and others involved in the placement of dependent and delinquent children have used the unrestricted/secure dichotomy to distinguish a shelter facility from a detention facility.