**In re: C.M.T., a Minor,**

**Appeal of: L.A.P., Natural Mother**

Superior Court of Pennsylvania.

Argued June 23, 2004.
Filed Oct. 29, 2004.

Kelly L. Darr, Philadelphia and Phillip A. Drumheiser, Carlisle, for appellant.

Before: MUSMANNO, GANTMAN and BECK, JJ.

BECK, J.:

¶ 1 In this appeal from an order of the juvenile court adjudicating a high school student dependent, we address the burden of proof required to establish that a child is "habitually and without justification truant from school" under 42 Pa.C.S.A. § 6302. We hold that the Commonwealth bears the burden of proving that the truancy is "without justification." We further hold that in this case, the hearing court

erred in refusing to allow appellant to present evidence to justify her absence from school. For these reasons, we vacate the order and remand for further proceedings.

¶ 2 C.M.T., a thirteen year old student at Middleburg High School, and her mother L.A.P. ("Mother") appeared before the Juvenile Court in Snyder County for a dependency hearing on October 29, 2003 after the Snyder County District Attorney filed a Petition seeking to have C.M.T. declared dependent due to habitual truancy. The Petition was filed in response to a referral made by Donna Samuelson, the Assistant Principal at Middleburg.

¶ 3 C.M.T. has Asperger's Syndrome, a neurological disorder that entitles her to special education programming and services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485. Pursuant to her rights under the IDEA, C.M.T. has had an Individualized Education Plan (IEP) in place since at least November 2002. Asperger's Syndrome is a high-functioning form of autism that affects a person's social interactions and ability to understand instructions. Among its many symptoms are a failure to develop peer relationships, a lack of social reciprocity and significant impairment of social and occupational functioning. *See* Diagnostic and Statistical Manual of Mental Disorders (DSM IV) 299.80. *See also www.autism.org/asperger.html.* Testimony at the hearing revealed that C.M.T. suffers from anxiety, panic attacks, depression and obsessive compulsive disorder. She takes a variety of medications to treat these disorders, including Klonopin, Zoloft, Lobutrin and Abilifi.

¶ 4 At the conclusion of the hearing the court adjudicated C.M.T. dependent, placed her under the supervision of the Snyder County Juvenile Probation Office and ordered her to attend school regularly and on time. Mother filed this timely appeal, asserting that: 1) the hearing court erroneously shifted the burden of proof at the hearing by requiring Mother to prove C.M.T.'s absences were justified, rather than requiring the Commonwealth to establish that the absences were unjustified; 2) the hearing court failed to conduct a comprehensive inquiry when it excluded the testimony of an expert witness who Mother offered to establish that C.M.T.'s truancy was justified because of her disabilities, their negative affect on her ability to attend school, and the school district's failure to provide services to overcome her disabilities; and 3) the record does not support the adjudication of dependency as it establishes that C.M.T.'s truancies were justified by her disabilities.

¶ 5 We begin with the standard and scope of review in dependency cases:

[W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re E.P., J.P. & A.P.*, 841 A.2d 128, 131 (Pa.Super.2003) (quoting from *In re R.W.J.*, 826 A.2d 10, 12 (Pa.Super.2003)).

¶ 6 Mother first argues that the hearing court erred by placing the burden of proof on her to establish that C.M.T.'s absences from school were "justified" under the Juvenile Act, rather than requiring the Commonwealth to prove that the absences were "without justification." We agree.

¶ 7 Adjudication of dependency is governed by the Juvenile Act, 42 Pa.C.S.A. § 6301–64 (the Act). Included among the definitions of a "dependent child" under the Act is "a child who . . . while subject to compulsory school attendance is *habitually and without justification* truant from school . . . ." § 6302 (emphasis supplied). Mother contends that "without justification" is an element of the definition of a dependent child that the Commonwealth bears the burden of proving. The hearing court disagreed, concluding instead that the question of justification for C.M.T.'s absences was an affirmative defense that Mother bore the burden of proving. Hearing Court Opinion, 1/29/2004, at 2.

■ ¶ 8 It is well-settled that in a dependency proceeding under the Juvenile Act, the petitioner bears the burden of proving that the statutory requirements are met. *R.W.J.*, 826 A.2d at 14. The hearing court's rationale for placing the burden on Mother was that the dependency proceeding was criminal or quasi-criminal in nature, thus requiring the "accused" to assert and prove an affirmative defense. This was clear error.

■ ¶ 9 First, adjudications under the Juvenile Act, even adjudications of delinquency, are not criminal in nature. *In the Interest of G.T.*, 409 Pa.Super. 15, 597 A.2d 638, 641 (1991) (*en banc*) ("Delinquency proceedings are not criminal in nature but . . . intended to address the special problems of children who have engaged in aberrant behavior disclosing a need for special treatment."); *In the Interest of Tasseing H.*, 281 Pa.Super. 400, 422 A.2d 530, 535 (1980) (explaining that purpose of juvenile proceedings is to facilitate "treatment, reformation and rehabilitation," not to punish). Further, although an adjudication of delinquency is based on an act that *"would* be a crime if it had been committed as an adult . . . ." *G.T.*, 597 A.2d at 641 (emphasis added), "a child can be adjudicated dependent . . . for noncriminal conduct." *In the Interest of Michael Y.*, 365 Pa.Super. 488, 530 A.2d 115, 118 (1987); *see also In the Interest of R.B.*, 424 Pa.Super. 57, 621 A.2d 1038, 1041 (1993) ("[A] child adjudicated dependent has committed no crime nor been charged with a crime.").

■ ¶ 10 Part of the confusion on this issue stems from the fact that the hearing court at times characterized the proceedings as addressing "a violation of the compulsory attendance law" and thus, a crime. However, the instant proceedings did not arise as a prosecution for violation of the compulsory education provisions of the Public School Code, 24 P.S. § 13–1333. Rather, the matter arose from a Dependency Petition filed pursuant to the Juvenile Act. While the truancy provisions of the Juvenile Act certainly must be construed in light of the compulsory education requirements of the Public School Code, proceedings pursuant to the two statutes are of a very different nature. *See* 42 Pa.C.S.A. § 6354, Official Comment (stating policy of "differentiation of juvenile proceedings from criminal proceedings"). Under the Juvenile Act, truancy is a status offense, and thus is noncriminal in nature.[1] *R.B.*, 621 A.2d at 1042; *Michael Y.*, 530 A.2d at 118–19.

---

1. "A status offense is conduct which if engaged in by an adult would not be legally prohibited." *In the Interest of R.B.*, 424 Pa.Super. 57, 621 A.2d 1038, 1042 n. 11 (1993) (citing *Commonwealth v. Feick*, 294 Pa.Super. 110, 439 A.2d 774, 776 n. 6 (1982)).

¶ 11 The court erred in analogizing justification under the truancy provision of the Juvenile Act to the affirmative defense of justification under the Criminal Code.[2]

¶ 12 Returning to the language of the provision, we find that it requires proof by clear and convincing evidence of three distinct facts, that is, that the child is (1) subject to compulsory school attendance and (2) habitually truant (3) without justification. With regard to the third item, the issue on appeal, we recognize that proving a negative is not an easy task. Neither party has presented us with controlling authority on the issue and we have found none. Although our research of the issue elsewhere reveals varying treatment among the states,[3] after careful consider-

---

**2.** Even if the instant proceeding were of a criminal nature, however, we would agree with Mother that the legislature's inclusion of the words "without justification" in the truancy provision sets out an element of the offense that the Commonwealth would be obliged to prove. *See* 18 Pa.C.S.A. § 103 ("ELEMENT OF AN OFFENSE. Such conduct or such attendant circumstances or such a result of conduct as: (1) is included in the description of the forbidden conduct in the definition of the offense . . . ."); *Commonwealth v. Lopez*, 523 Pa. 126, 131, 565 A.2d 437, 440 (1989) (holding statutory language "except in his place of abode or . . . place of business" is an element of the crime of carrying a firearm without a license where included in the definition of the offense); *cf. id.* (specifically enumerated statutory exceptions create affirmative defenses). As the statutory language at issue here is not in the nature of an exception, but a part of the definition of the conduct establishing dependency, we conclude that "without justification" is one of the statutory requirements that the Commonwealth must prove.

**3.** In *In the Matter of the Appeal in Maricopa County Juvenile Action No. J–77286*, 25 Ariz. App. 563, 545 P.2d 74 (1976), the Court of Appeals of Arizona considered a challenge by a juvenile to the revocation of his probation due to truancy. The juvenile appellant asserted, *inter alia*, "[t]hat the state failed to carry the burden of proof in proving the juvenile was absent from school without a valid excuse." *Id.* at 75. The Court of Appeals disagreed, characterizing the existence of a valid excuse as "defensive matter" that the state was not required to present. *Id.* at 76. However, in that case, the juvenile never presented any assertion of a valid excuse to the state or the juvenile court, and the appellate court concluded that the state had no duty to disprove a "phantom excuse." *Id.*

The juvenile appellant in *In the Interest of Y.D.M.*, 197 Colo. 403, 593 P.2d 1356 (1979), asserted that the juvenile court denied her due process by placing on her the burden of proving justification for her absences from school. The Colorado Supreme Court rejected this argument, reasoning that to require the state "to present evidence to disprove every asserted justification for absence from school would be 'too cumbersome, too expensive and too inaccurate.'" *Id.* (quoting *Patterson v. New York*, 432 U.S. 197, 209, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). The court worried that the state would be required to "prove a negative in situations where a thorough investigation could unearth no evidence," thus imposing on the state "an impossible or futile task." *Id.* at 1360–61.

*Y.D.M.* is distinguishable, however, from the case before us, in that the adjudication there was governed by Colorado's compulsory school attendance law, Colo.Rev.Stat. § 22–33–104, the language of which establishes statutory exceptions to the attendance requirement which would be construed as creating affirmative defenses. *See* Colo.Rev.Stat. § 22–33–104(1), (2). The Colorado statute does not contain language comparable to our Juvenile Act provision that appears to make lack of justification an element of truancy.

In *In the Matter of J.B.S., Jr.*, 696 S.W.2d 223 (Tex.App.1985), the Court of Appeals of Texas concluded that the state failed to satisfy its burden of proving that the juvenile appellant's absences from school were unexcused. Appellant was adjudicated delinquent under the Texas Family Code, which included in the definition of "conduct indicating a need for supervision . . . [t]he unexcused voluntary absence of a child" for varying periods of time. *Id.* at 224 (quoting Tex. Fam.Code § 51.03(b)). The Court of Appeals determined that where appellant presented some evidence that the absences were due to illness, the lack of a written excuse was insufficient to satisfy the state's burden of proving

ation, we adopt the reasoning of the Supreme Court of Minnesota, which addressed directly the difficulty faced by the state in establishing lack of justification. The Minnesota court set forth a logical and workable standard.

¶ 13 *In the Matter of the Welfare of L.Z., C.R.P. & S.L.P.*, 396 N.W.2d 214 (Minn. 1986), addressed a Minnesota statute that defined a truant as "a child ... absenting himself from attendance at school without lawful excuse." *Id.* at 217 (quoting Minn. Stat. § 260.015, subd. 19). The *L.Z.* court first concluded that the absence of a lawful excuse was an element of truancy and then went on to consider how the state could satisfy its burden. The court noted that "it is extremely difficult to prove why a child is absent from school." *Id.* at 218. However, it concluded that, if a proper foundation is laid, school attendance records are admissible to show: "(a) the child was absent on a particular day; (b) what excuse, if any, was offered by the parent; and (c) the fact that no excuse was received from the parent or guardian ...." *Id.* at 220–21. The *L.Z.* court recognized that in certain cases "[t]he absence of a lawful excuse ... may involve a judgment of school personnel on the validity of a proffered excuse." *Id.* at 220. Thus, if "the school rejects a facially valid excuse," the child must have an opportunity "to confront the person making the adverse judgment." *Id.* at 221.

¶ 14 The *L.Z.* court concluded that because "the responsibility for [initially] providing a lawful excuse for the child is not on the school but the parent," school attendance records showing the lack of a parental excuse or receipt of "an excuse insufficient as a lawful excuse" may be introduced by the state as evidence permitting "an inference that the child's ab-

sence was [unjustified]." *Id.* Thereafter, "it would be incumbent on the child to introduce evidence to rebut the inference." *Id.* The court concluded,

> [T]he state must produce evidence from which it may be inferred ... that the child was absent without a lawful excuse .... In most cases this can be accomplished by use of the school attendance records for which a proper foundation has been laid plus the testimony of the attendance clerk or social worker who talked with the child.

*Id.* at 222.

■ ¶ 15 We find the Minnesota court's analysis persuasive. Therefore, we hold that, under section 6302 of the Juvenile Act, "without justification" is an element of a determination of dependency on the basis of truancy. The Commonwealth bears the burden of proving by clear and convincing evidence that a child's absence from school is "without justification." To meet this burden, the Commonwealth may offer testimony and school attendance records to establish that no excuse was received by the school for an absence, or that a proffered excuse is facially invalid or insufficient. Upon introduction of such evidence, an inference arises that the absence in question is unjustified, at which point the parent or minor child may proceed to rebut the inference. The ultimate burden of proof, however, remains with the petitioner, that is, the Commonwealth. *R.W.J.*, 826 A.2d at 14.

¶ 16 In its brief, the Commonwealth insists that it met its burden of establishing that C.M.T.'s absences were not justified. This assertion leads to Mother's next claim, that is, that the juvenile court erred by excluding Mother's relevant evidence, primarily expert testimony, regarding the

beyond a reasonable doubt that the absences were unexcused, as the Family Code's defini-

tion of excused absence did not require a note from the parents. *Id.* at 225.

causes underlying C.M.T.'s absences. In particular, Mother claims that her proffered evidence would have shown that C.M.T. was absent due to her disabilities, their effect on her attendance, and the school district's failure to provide services that would enable her to overcome the effects of her disabilities.

¶ 17 "The decision to admit or to exclude evidence, including expert testimony, lies within the sound discretion of the trial court." *Ettinger v. Triangle–Pacific Corp.*, 799 A.2d 95, 110 (Pa.Super.2002). Generally, we review a trial court's evidentiary rulings for abuse of discretion; where an evidentiary ruling turns on a question of law, however, our review is plenary. *Zieber v. Bogert*, 565 Pa. 376, 381 n. 3, 773 A.2d 758, 760 n. 3 (2001). However, with regard to the breadth of evidence to be admitted at a dependency hearing, we note that "[i]t is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." *In re R.W.J.*, 826 A.2d 10, 12 (Pa.Super.2003) (citation omitted).

¶ 18 Although it recognized that issues relating to C.M.T.'s disability may have been relevant to the justification inquiry; the hearing court refused to admit much of the evidence that Mother attempted to introduce on this point, which centered on the inadequacy of C.M.T.'s treatment within the school district. The reason for the court's ruling appears to be the fact that C.M.T. had an IEP in place throughout the period in which she was alleged to be truant. The hearing court found it relevant that Mother had not filed a due process challenge to the IEP at the time the absences occurred and so the court determined that the dependency proceeding was not the proper forum in which to raise such a challenge. Hearing Court Opinion,

1/29/2004, at 2–3. The court also concluded that the parties were "bound by the provisions" of the IEP and took the position that it would admit evidence relating to the IEP and C.M.T.'s disability only if it tended to establish that the school district was not abiding by the provisions of the IEP. *Id.*

¶ 19 As a result of its ruling limiting Mother's evidence, the hearing court excluded evidence related to C.M.T.'s disability history, the effect of her disabilities on her participation in school, her needs with respect to the relationship between her absenteeism and her disability, and the services that are or are not available to her in school. Most significantly, the court refused to permit the introduction of expert testimony by Dr. William Jones, a retired special education professor and school psychologist who has worked with C.M.T. The court stated that "in this context of truancy whether [Mother] believes that [the IEP] adequately addressed her daughter's Asperger's or not is irrelevant." *Id.* at 82.

¶ 20 We conclude that the hearing court erred as a matter of law in excluding evidence bearing on the relationship between C.M.T.'s disabilities and her absenteeism. We recognize that the hearing court was, quite properly, attempting to distinguish between those issues that must be addressed by the parties within the context and framework of the IDEA, and those that were relevant to the dependency determination. However, it is clear that such issues have the potential to overlap in the case of an IEP student who is facing dependency hearings based on habitual truancy.

¶ 21 Furthermore, we question whether the Commonwealth properly exercised its prosecutorial discretion to litigate this matter. The comprehensive framework established by the IDEA and the particu-

lar provisions of C.M.T.'s IEP appear to be the more appropriate vehicles for resolving these specialized and sensitive issues. We note that the current referral of this case to the District Attorney is the second one of its kind. On a previous occasion, the Snyder County Probation Office urged the District Attorney to withdraw a dependency petition, asserting that it (the Probation Office) typically handled delinquency matters, such as car thefts and burglaries, and was not equipped to handle C.M.T.'s case because of the many mental health issues it involved. The District Attorney apparently agreed and filed paperwork to withdraw the original petition. However, a second referral was pursued by the District Attorney's Office and resulted in the adjudication of dependency here on appeal. This time, the Assistant District Attorney suggested that an appropriate solution may be for the Probation Officer to go to C.M.T.'s house and pull her out of bed each morning.

■ ¶ 22 "One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children ...." *Commonwealth v. Davis,* 330 Pa.Super. 551, 479 A.2d 1041, 1045 (1984) (citing 42 Pa.C.S.A. § 6301(b)(1)), *aff'd,* 510 Pa. 536, 510 A.2d 722 (1986). "The purpose of juvenile proceedings is to seek treatment, reformation and rehabilitation, and not to punish." *In the Interest of Bosket,* 404 Pa.Super. 265, 590 A.2d 774, 776 (1991) (quoting *In the Interest of Leonardo,* 291 Pa.Super. 644, 436 A.2d 685, 687 (1981)). To this end, "the juvenile court system was designed to provide '[a] distinctive procedure and setting to deal with the problems of youth ....' " *Id.* (quoting *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d

346 (1975)) (first alteration and omission in original). At the same time, this Court has recognized "the seriousness of the nature of these proceedings and the potential harm that could result from adjudicating the merits of a dependency petition without a proper evidentiary foundation." *In the Interest of T.M.,* 456 Pa.Super. 140, 689 A.2d 954, 956 (1996). For these reasons, the juvenile court in a dependency proceeding both can and must conduct a *comprehensive* inquiry into the circumstances of the matter. *R.W.J.,* 826 A.2d at 14 (citing *Matter of DeSavage,* 241 Pa.Super. 174, 360 A.2d 237 (1976)). In the course of conducting this inquiry, "[t]he court *should of course receive evidence from all interested parties.* In addition, 'the judge should receive, *and if necessary should seek out,* evidence from objective, disinterested witnesses,' e.g., neighbors, teachers, social workers, and psychological experts." *In the Interest of Michael Y.,* 365 Pa.Super. 488, 530 A.2d 115, 118 (1987) (citations omitted) (emphasis added).

■ ¶ 23 While we agree with the hearing court that dependency proceedings are not the forum in which to litigate the adequacy of an IEP,[4] we hold that evidence concerning the relationship between C.M.T.'s disabilities and her absenteeism, including evidence as to the availability of services that would facilitate her ability to attend school, are not only relevant but necessary to any determination of dependency. This is not to say that the juvenile court is charged with enforcement of the IDEA or compliance with the IEP. The relevant inquiry is whether C.M.T.'s disabilities constitute justification for absenteeism within the context of a dependent child. If the evidence establishes

---

4. Mother requested a formal special education due process hearing pursuant to the IDEA on September 9, 2003. N.T. 10/29/2003 at 83. A hearing was held on October 8, 2003. *Id.*

justification, then she simply may not be adjudicated dependent.

¶ 24 We further reject the juvenile court's apparent *per se* rule that compliance with the IEP by the school district establishes an irrebuttable presumption that C.M.T.'s alleged disability-related absences are unjustified. To prohibit any inquiry into the appropriateness of C.M.T.'s treatment at school as it relates to her attendance issues would frustrate the purpose of the Juvenile Act, which is "to seek treatment, reformation and rehabilitation ...." *In the Interest of Tasseing H.*, 281 Pa.Super. 400, 422 A.2d 530, 535 (1980). To this end we note,

> [A] trial court, acting pursuant to the Juvenile Act, has broad powers of discretion "guided by the overriding principle of acting to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions [of the Juvenile Act]." In rendering the disposition "best suited to the protection and physical, mental, and moral welfare of the child," our courts have emphasized that both the hearing and reviewing courts should take into consideration any and all factors that bear upon the welfare of the child and can aid the court's inevitably imprecise prediction about the child's future well-being.

*In re T.R., J.M., C.R. & C.R.*, 445 Pa.Super. 553, 665 A.2d 1260, 1265 (1995) (alteration in original) (citations omitted), *rev'd on other grounds*, 557 Pa. 99, 108, 731 A.2d 1276, 1281 (1999); *see also* 42 Pa.C.S.A. § 6301(b).

¶ 25 In light of the purpose and mandates of the Juvenile Act, we fail to see how C.M.T.'s "treatment, reformation and rehabilitation" can proceed without a full and thorough inquiry into the circumstances of her disabilities and her very specific needs. Certainly a disposition that does not take into account the unique circumstances of this case may be harmful to this child.

¶ 26 We find that the trial court erred in limiting Mother's evidence of justification. As a result, a remand is warranted.[5]

¶ 27 We vacate the Order adjudicating C.M.T. dependent and remand for further proceedings. On remand, the Commonwealth bears the burden of proving that C.M.T.'s absences from school are without justification. In making this determination, the hearing court must admit and, if necessary, seek out, any and all evidence, including expert testimony, relevant to the question of whether C.M.T.'s absences are justified by her disabilities. In the event that an adjudication of dependency is ultimately made, the hearing court should also entertain evidence relevant to an appropriate disposition, rather than simply placing C.M.T. within the control of the Probation Office, an entity which has already questioned its own capacity to supervise C.M.T.

¶ 28 The adjudication of dependency is vacated and the matter is remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

5. In her final issue, Mother contends that the record developed below supports a finding that C.M.T.'s truancies were justified by her disabilities. In light of our disposition of the other issues on appeal, we decline to consider this question; we hold that a remand and additional proceedings are appropriate here.