J-A21045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.J., MOTHER | No. 622 EDA 2015 |

Appeal from the Order entered January 20, 2015,
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-DP-0002954-2014,
FID: 51-FN-383670-2009

| | |
|---|---|
| IN THE INTEREST OF: A.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.J., MOTHER | No. 623 EDA 2015 |

Appeal from the Order entered January 20, 2015,
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-DP-0002955-2014,
FID: 51-FN-383670-2009

BEFORE: ALLEN, MUNDY, and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.: **FILED AUGUST 20, 2015**

E.J. ("Mother") appeals from the orders which adjudicated D.J. (born in September of 2013), and A.J. (born in October of 2014) (collectively "the Children") dependent. We affirm.

In its opinion filed March 27, 2015, the trial court set forth the factual background and procedural history of this appeal. On December 17, 2014, the Philadelphia Department of Human Services ("DHS") first became involved with the family when DHS sought an Order of Protective Custody

_____

* Former Justice specially assigned to the Superior Court.

("OPC") for Mother's eldest child[1], as well as the Children. The OPC stated that DHS received a General Protective Services ("GPS") report alleging that Mother's eldest child, who was ten years old, did not feel comfortable living with her father, R.F., because her eleven-year-old cousin who lived in the home was threatening and hitting her. As a result, Mother's eldest child went to the home of maternal grandmother, B.S. The OPC further averred that on December 17, 2014, DHS visited Mother's eldest child and Mother at B.S.'s home, where DHS learned that Mother's eldest child had two siblings, the Children. B.S. would not allow the Children to continue to stay at her home. Mother resided at the home of her boyfriend, M.F., who is the Children's father ("Father"). Father would not allow DHS to visit the home where they resided. Mother did not have housing for the Children or herself. Consequently, DHS obtained the Order of Protective Custody ("OPC") for Mother's eldest child and the Children, and the eldest child and the Children were placed in foster care. On December 19, 2014, a shelter care hearing was held. The trial court lifted the OPC, with the Children to remain in foster care.

On December 24, 2014, DHS filed petitions seeking a finding that the Children were dependent. On January 20, 2015, the trial court held a hearing on the dependency petitions. At the dependency hearing, Deanna Crawford, the DHS social worker, testified, as did Mother. Following the

---

[1] Mother's eldest child, A.J., is not subject to this appeal.

hearing, on January 20, 2015, the trial court entered orders adjudicating the Children dependent, and removing them from Mother's home. On January 28, 2015, Mother filed a motion for reconsideration of the trial court's January 20, 2015 orders. Before the trial court ruled on Mother's motion for reconsideration, Mother filed timely Notices of Appeal on February 17, 2015, and filed Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court *sua sponte* consolidated the appeals.

On appeal, Mother raises two issues:

1. Whether the evidence was sufficient to sustain the [a]djudication of [d]ependency?

2. Additionally, whether the evidence was sufficient to sustain removal of the Children from [Mother], and place them into [DHS]'s custody?

Mother's Brief at 5.

The relevant standard and scope of review in child dependency matters is as follows:

We accept the trial court's factual findings that are supported by the record, and defer to the court's credibility determinations. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule [the trial court's] findings if they are supported by competent evidence.

*In re R.P.*, 957 A.2d 1205, 1211 (Pa. Super. 2008) (citations and quotation marks omitted) (brackets in original).

Section 6302 of the Juvenile Code defines the "dependent child" in relevant part as one who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

This Court has explained our review of the statutory requirements in a dependency case as follows:

The burden of proof in a dependency proceeding is on the petitioner . . . who must show [that] the juvenile is without proper parental care, and that such care is not immediately available. A finding of dependency must be supported by clear and convincing evidence that proper parental care and control are not available. The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Without such evidence, a child cannot be adjudged dependent and must be returned promptly to his or her parent.

*In the Interest of J.M.*, 652 A.2d 877, 880 (Pa. Super. 1995), *allocatur denied*, 663 A.2d 692 (Pa. 1995) (citations and quotation marks omitted).

"The legislature defined ['dependent child'] in exceedingly broad terms precisely because it is impossible to foresee all the possible factual situations that may arise." *In re R.W.J.*, 826 A.2d 10, 15 (Pa. Super. 2003) (citation omitted) (quotations marks and brackets in original). In a dependency case, the court must make a comprehensive inquiry into whether proper parental

care is immediately available or what kind of care the parent could provide in the future. *Id.*, at 14.

Once the court determines that a child is dependent, "the court may then make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision . . . ." *In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000). A dependent child may be separated from parents only when necessary for the child's safety, welfare, or health. *See In the Interest of J.O.V.*, 686 A.2d 421, 422 (Pa. Super. 1996); 42 Pa.C.S.A. § 6301(b)(1), and (3).

After careful review of the record, we are satisfied the trial court properly addressed Mother's issues concerning the Children's dependency adjudication. The trial court's decision to remove the Children from the care of Mother, adjudicate the Children dependent, and place them in the custody of DHS, and also to impose conditions on Mother for reunification of the family, is supported by clear and convincing, competent evidence. Accordingly, we adopt the trial court's March 27, 2015 opinion as our own, and affirm the trial court's orders on the basis of the trial court's opinion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2015

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**JUVENILE BRANCH**

2015 MAR 27 PM 2:00

PROPROTHY

|                        |   |                          |
|------------------------|---|--------------------------|
| In The Interest Of:    | : | CP-51-DP-0002954-2014    |
| D.J. and A.J.,         | : | CP-51-DP-0002955-2014    |
| Minors                 | : |                          |
|                        | : | FID: 51-FN-383670-2009   |
|                        | : |                          |
| Appeal of E.J., Mother | : | 622 EDA 2015             |
|                        | : | 623 EDA 2015             |

## OPINION

This Opinion is submitted relative to the appeal of Mother, E.J., ("hereinafter "Mother"), from this Court's Order entered on January 20, 2015, which adjudicated her children, D.J. and A.J., dependent. For the reasons discussed, this Court respectfully submits that its decision should be affirmed.

## Background

On December 17, 2014, the Department of Human Services ("DHS") filed an Order of Protective Custody ("OPC") as to ten-year old Alayna J., one-year old D.J., and four-month old A.J.[1] The OPC alleged that DHS received a General Protective Services ("GPS") report that ten-year old Alayna J. was living with her father and did not feel comfortable staying with her father because her eleven-year old cousin who lived in her father's home threatened and slapped her. Alayna J.'s father made arrangements for her to stay with her maternal aunt while DHS conducted an investigation. However, Alayna J. and Mother refused this arrangement. The OPC further alleged that on December 17, 2014, DHS conducted a home visit at Alayna J.'s maternal grandmother's home with

---

[1] Only one-year old D.J. and four-month old A.J. are the subjects of this appeal; ten-year old Alayna J. is not a subject to this appeal.

Alayna J. and Mother. At that home visit, DHS learned of Alayna J.'s two younger siblings, one-year old D.J. and four-month old A.J., who were not recorded in the December 16, 2014 GPS report. The OPC also alleged that the maternal grandmother indicated that the children could not stay at her home. The OPC further stated that DHS attempted to assess Mother's home but was told by Mother that her paramour indicated that DHS could not come into his home. Since Mother and the children had nowhere to go, an OPC was obtained to place the children in DHS's care.

On December 19, 2014, a shelter care hearing was held, at which time the OPC was lifted and the children's temporary commitment to DHS was to stand. DHS filed dependency petitions on the children on December 24, 2014. On January 8, 2015, the adjudicatory hearing on the dependency petitions was continued because the Court granted DHS's request for a continuance in order to conduct further investigation.

The adjudicatory hearing for Alayna J., D.J. and A.J. was held on January 20, 2015. At the adjudicatory hearing, the Court heard testimony from DHS social worker Deana Crawford. Ms. Crawford testified that the case became known to DHS due to a report that Alayna J. was fearful of returning to her father's house because she was being threatened by her father and her cousin who lived in the home. N.T. 1/20/15 at 4. Ms. Crawford testified that Alayna J.'s father had full custody of her, but that Mother had custody of the two youngest children, D.J. and A.J. Id. at 5. Ms. Crawford testified that D.J. and A.J. were removed from Mother and placed in foster care because Mother was not able to provide appropriate housing and Mother refused to allow the social worker to do a home assessment. Id. at 7. Ms. Crawford stated that when she went to meet with Mother on December 18, 2014 at the children's maternal grandmother's home, Mother

2

stated that she did not live with the maternal grandmother, but that she lived at another home with someone else who would not allow DHS to enter the home. Id. at 7-8. Ms. Crawford stated that she was concerned about D.J. and A.J. because she was unsure where Mother and the children were residing and Mother was refusing to allow DHS to do a home assessment. Id. Ms. Crawford also stated that when she talked to Mother's paramour, he denied that Mother lived at his home. Id. at 12. Ms. Crawford testified that as of the date of the adjudicatory hearing on January 20, 2015, she still did not know where Mother was residing. Id. Ms. Crawford further testified that since D.J. and A.J. were placed in a foster home on December 18, 2014 up until the adjudicatory hearing on January 20, 2015, Mother had not visited the two children nor made any outreach to DHS regarding visitation or conducting a home assessment. Id. at 8, 10.

Mother testified at the adjudicatory hearing that she agreed with Ms. Crawford's testimony that DHS did not know where she was living and agreed that she did not live with her paramour. Id. at 15. Mother stated at the adjudicatory hearing that she instead lived with her grandmother at 2037 North 3rd Street and that DHS could do a home assessment on that house. Id. With respect to visitation, Mother stated that she asked Ms. Crawford twice when they came to Court when she could visit the children and Ms. Crawford said "I don't know, we'll call you or it's in the court['s] hands." Id.

After considering all of the testimony and evidence at the adjudicatory hearing, the Court found by clear and convincing evidence that the children were dependent and committed them to the custody of DHS. Id. at 20. The Court ordered, *inter alia*, for DHS to conduct a home assessment on where Mother was residing at 2037 North 3rd Street, Philadelphia, Pennsylvania. The Court also stated that Mother's counsel could

3

seek reconsideration of its Order if, after further investigation, counsel found new or different information. Id. The Court also allowed DHS to proceed at the next hearing on its claim of aggravated circumstances against Mother, on the basis that Mother's parental rights were previously involuntarily terminated as to two other of her children, pursuant to paragraphs "h" and "i" in the children's dependency petitions. Id. at 21.

On January 28, 2015, Mother filed a Motion for Reconsideration of the Court's January 20, 2015 Order. However, Mother's Motion for Reconsideration did not allege any new or different facts or circumstances than the facts that were presented at the adjudicatory hearing. See Mother's Petition to Reconsider Adjudication of Dependency and Placement (Court Exhibit "A"). Before this Court ruled on Mother's Motion for Reconsideration, Mother filed the instant appeal as to D.J. and A.J on February 17, 2015.

## Discussion

Mother has raised two issues on appeal in her Pa.R.A.P. 1925(b) Statement. First, Mother argues that the Court "erred in Adjudicating [the Children] Dependent (the evidence to have been insufficient to sustain the Adjudication)." See Mother's 1925(b) Statement, at ¶ 1 (Court Exhibit "B"). Second, Mother avers that the Court "erred in removing [the Children] from [Mother], and the placing of the Child[ren] in the custody of the Department of Human Services (the evidence having been insufficient to substantiate that decision as well)." Id. at ¶ 2.

Pursuant to 42 Pa.C.S. § 6302, a "dependent child" is defined, in relevant part, as one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." Further, "[a] determination that there is a lack of proper parental care or control

4

may be based upon evidence of conduct by the parent, guardian or other custodian that places *the health, safety or welfare of the child at risk....*" 42 Pa.C.S. § 6302 (emphasis added). A finding of dependency must be supported by clear and convincing evidence. In re J.C., 5 A.3d 284, 288 (Pa. Super. 2010). This means "evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. "In the course of conducting this inquiry, the court should of course receive evidence from all interested parties." In re C.M.T., 861 A.2d 348, 356 (Pa. Super. 2004) (citations omitted). Additionally, "the judge should receive, and if necessary should seek out, evidence from objective, disinterested witnesses, e. g., neighbors, teachers, social workers, and psychological experts." Id. "If a child is adjudicated dependent under the Juvenile Act, he or she cannot be separated from his or her parents absent a showing that the separation is clearly necessary." In the Interest of C.P., 836 A.2d 984, 987 (Pa. Super. 2003).

The standard of appellate review which the Pennsylvania Superior Court employs in cases of dependency is as follows:

> [W]e must accept the facts as found by the trial court unless they are not supported by the record...We review for abuse of discretion...[W]e accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

In the Interest of C.M., 882 A.2d 507, 513 (Pa. Super. 2005). Accordingly, the Superior's Court's scope of review "is of the broadest possible nature." In Re C.J., 729 A.2d 89, 92 (Pa. Super. 1999).

Here, the Court determined that there was clear and convincing evidence that D.J. and A.J. were dependent under 42 Pa.C.S. § 6302. In making this finding, the Court

5

heard testimony from several witnesses and carefully considered all of the evidence that was presented at the adjudicatory hearing. The evidence that was presented supported the finding that proper parental care and control were not immediately available to the children by Mother, for purposes of determination that the children's health, safety and welfare were at risk. Specifically, the Court heard testimony that Mother was not forthcoming about where A.J. and D.J. were living and that Mother would not allow DHS to do a home assessment. As a result, DHS could not assess the safety of these very young children because Mother refused to tell DHS where the children were living. This gave the Court grave concerns about the children's safety and welfare. As the Court stated at the adjudicatory hearing in response to Mother's counsel's argument:

> [Mother's counsel], doesn't it bother you that the fact that DHS asked mom where your kids living? We need to see them. Then we'll be out your hair, and when mom can't do that doesn't that give you safety concern? Really, doesn't it? Because that's DHS's job, isn't it? To make sure the children are safe. And, in fact, if mom had done that it wouldn't be a safety concern because other than that then we'd have to assume a whole bunch of things. We don't know that the children are safe. We don't know anything because mom just didn't afford them that right. N.T. 1/20/15 at 18-19.

The Court also had concerns regarding Mother's credibility in that she gave her grandmother's address as her residence for the first time at the adjudicatory hearing and she had not visited her children or made any outreach to DHS regarding visitation or conducting a home assessment since her children were placed. Despite this, the Court nonetheless ordered DHS to conduct a home assessment on Mother's current residence to determine if it was appropriate.[2] The Court also afforded Mother's counsel the

---

[2] The Court has not been made aware of the outcome, if any, of this home assessment.

6

opportunity to seek reconsideration of its January 20, 2015 Order, but Mother's counsel did not offer any new or additional facts in the Motion for Reconsideration.

Based on the testimony received at the adjudicatory hearing, the evidence clearly showed, by clear and convincing evidence, that D.J. and A.J. were without proper parental care and the Court was compelled to find, based upon the facts before it, that Mother placed the health, safety, and welfare of the children at risk. As such, the Court properly found that D.J. and A.J. were dependent children within the meaning of the statute and placed them in the custody of DHS.

## Conclusion

For these reasons, the Court respectfully submits that its decision be affirmed.

BY THE COURT,

_____
VINCENT L. JOHNSON, J.

Dated: March 27, 2015

7