J-A12008-24

2024 PA Super 199

| IN THE INTEREST OF: R.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: F.H., MOTHER | : | No. 230 EDA 2024 |

Appeal from the Order Entered December 28, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001180-2017

| IN THE INTEREST OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: F.H., MOTHER | : | No. 231 EDA 2024 |

Appeal from the Order Entered December 28, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001305-2017

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.: **FILED SEPTEMBER 6, 2024**

Appellant, F.H. ("Mother"), appeals from the December 28, 2023 orders of adjudication and disposition that found her sons, R.B., born in December 2008, and S.B., born in May 2007 (collectively, the "Children"), dependent

_____

[*] Former Justice specially assigned to the Superior Court.

pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302(5).[1]  After careful review,

we affirm.

The trial court aptly set forth the factual history of this case in its Rule

1925(a) opinion, as follows:

> The Philadelphia Department of Human Services ("DHS") has been aware of this family since 2017 due to truancy concerns.  On May 17, 2023, [t]he Honorable Deborah L. Canty conducted a Special Guardian [] Motions Hearing.  [Following the hearing,] Judge Canty vacated the maternal grandmother's Permanent Legal Custody order and granted full legal and physical custody of the Children to Mother.  In the [Special Guardian] Motions Hearing order, Judge Canty also found that the Children were truant from school and ordered DHS to file a truancy and dependency petition for the Children.  (**See** Trial Court [Special Guardian] Motions order, 5/17/2023).  A dependency petition was filed on June 27, 2023. The [a]djudicatory hearing was held on three dates: October 12, 2023, December 11, 2023, and December 28, 2023.[2]

Trial Court Opinion, 2/14/2024, at 1-2.

During the hearing on October 12, 2023, DHS investigator Emily

Lipscomb detailed that DHS received a general protective services ("GPS")

report on May 18, 2023, alleging that the Children were truant in the 2022-

2023 school year.  **See** N.T., 10/12/2023, at 6-7.  Ms. Lipscomb testified that,

upon investigation, she learned that S.B. had 50 unexcused absences, and

_____

[1] The Children's biological father, R.B. ("Father"), is deceased.

[2]  Initially, the court scheduled the hearing regarding DHS's petition for July 17, 2023, but continued the case to August 14, 2023, due to the unavailability of Mother and DHS.  Thereafter, the court again continued the hearing to October 12, 2023, at the request of Mother's attorney because Mother had recently given birth.

R.B. had 17 unexcused absences during the 2022-2023 school year. *See id.* at 8. Accordingly, Ms. Lipscomb determined that the GPS report was valid for truancy. *See id.* at 8-9. Community Umbrella Agency ("CUA") case manager Niema Barnet, who was assigned to the case in September 2023, similarly testified on October 12, 2023, that for the 2023-2024 school year R.B. had already missed four days, and S.B. had been absent for two. *See id.* at 10-11. The court additionally spoke with the Children on the record in open court on this date.[3, 4] Ultimately, the court continued the hearing on October 12, 2023, to allow CUA the opportunity to obtain full "school reports"[5] for the Children for the 2022-2023 and 2023-2024 school years. The court stated, as follows:

> THE COURT: Adjudication will be deferred. CUA is to follow up with obtaining a full school report from [this] year as well as last year.
>
> The youth may be excused for the next listing so that they attend school. I expect both [R.B.] and [S.B.] to attend school on time with no unexcused absences, lateness, or cuts. [P]lease follow-up with any notes with regard to any appropriate absences; if they were ill or had other absences. Let's give it a 60[-]day date[.]

---

[3] The Children, who were fifteen and sixteen years old, were represented by a guardian *ad litem* ("GAL") during the hearings.

[4] The court again spoke with R.B. on the record in open court at the end of the December 28, 2023 hearing. The court inquired regarding the Children's grades, their future goals, and provided them with a website that would help them explore career choices. *See* N.T., 10/12/2023, at 14-17.

[5] Because the trial court refers to the evidence regarding the Children's absences as "school reports," that is how we refer to them as well.

N.T., 10/12/2023, at 19.

After briefly hearing testimony from Ms. Barnet on December 11, 2023, the trial court again continued the case because CUA did not bring physical copies of the Children's school reports. *See* N.T., 12/11/2023, at 6.

When the court reconvened on December 28, 2023, CUA supervisor Shakar Albert described how CUA obtains school records and that in this case, he submitted a request through DHS Education Support which obtained the records through the School District of Philadelphia. *See* N.T., 12/28/2023, at 8. He testified that the Children's updated school records indicate that, for the 2023-2024 school year, R.B. had seven unexcused absences, and S.B. had thirteen unexcused absences. *See id.* at 8-10, 15-17. Mr. Albert further averred that Mother informed him that she sent an email to R.B.'s school on December 22, 2023, to potentially excuse four of R.B.'s unexcused absences. *See id.* at 13-14, 21-22. However, Mr. Albert reported that there was no indication that the school had accepted Mother's email and excused any of R.B.'s absences. *See id.* Mr. Albert stated he had no direct knowledge of whether Mother had provided S.B.'s school with acceptable reasons for any of S.B.'s unexcused absences. *See id.* at 17.

During the December 28, 2023 hearing, counsel for Mother and the GAL collectively objected to the admission of Children's school reports and statements made by Mr. Albert regarding the same on the basis of hearsay.

*See id.* at 9-10, 12, 15-16. Mother was present for the hearings, but she did not testify.

By order dated and entered December 28, 2023, the trial court adjudicated Children dependent pursuant to 42 Pa.C.S.A. § 6302(5) and ordered legal and physical custody of the Children to remain with Mother under the supervision of DHS.

Mother timely filed separate notices of appeal at the above-captioned cases, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On February 7, 2024, this Court *sua sponte* consolidated Mother's appeals. The trial court filed its Rule 1925(a) opinion on February 14, 2024.

On appeal, Mother raises the following issues:

1. Did the trial court err by considering inadmissible evidence of the Children's attendance?

2. Did the trial court err by reopening the record?

3. Did the trial court err by considering evidence not noticed in the dependency petition?

4. Did the trial court err by finding that the Children are dependent children?

Mother's Brief at 3 (suggested answers omitted).[6]

Our standard of review for dependency cases is as follows.

---

[6] The GAL filed a brief advocating for the reversal of the trial court's order. Specifically, the GAL agrees with Mother with respect to her first issue. *See* GAL Brief at 12-23.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (cleaned up).

The Juvenile Act defines a "dependent child," in pertinent part, as a child who:

. . .

> (5) while subject to compulsory school attendance is habitually and without justification truant from school;

42 Pa.C.S.A. § 6302(5). Under the Public School Code of 1949, a student is of compulsory school age from ages six to eighteen. *See* 24 P.S. §§ 13-1326 (defining "compulsory school age"), 13-1327(a) (requiring compulsory school attendance). A child subject to compulsory school attendance is habitually truant if she has six or more unexcused absences during the current school year. *See* 24 P.S. § 13-1326 (defining "habitually truant").

To adjudicate a child dependent based on truancy, the petitioner must submit "clear and convincing evidence of three distinct facts, that is, that the child is (1) subject to compulsory school attendance and (2) habitually truant (3) without justification." *In re C.M.T.*, 861 A.2d 348, 353 (Pa. Super. 2004); *see also* 42 Pa.C.S.A. § 6302(5). This Court has further explained the evidentiary burden in these cases, as follows:

> The Commonwealth bears the burden of proving by clear and convincing evidence that a child's absence from school is "without

justification." To meet this burden, the Commonwealth may offer testimony and school attendance records to establish that no excuse was received by the school for an absence, or that a proffered excuse is facially invalid or insufficient. Upon introduction of such evidence, an inference arises that the absence in question is unjustified, at which point the parent or minor child may proceed to rebut the inference. The ultimate burden of proof, however, remains with [] the Commonwealth.

*C.M.T.*, 861 A.2d at 354.

Regarding her first claim, Mother argues that the trial court erred in adjudicating the Children dependent pursuant to Section 6302(5) because it relied solely upon inadmissible hearsay evidence that did not satisfy any exception under Pa.R.E. 802-803. *See* Mother's Brief at 9-10. She contends that the Children's school records are inadmissible hearsay because they are "out-of-court statements from unnamed school employees about whether the Children attended school, and [the records were] being offered to prove that the Children were in fact absent from school." *See id.* at 10 (citing Pa. R.E. 801(c)). Therefore, analogizing the instant case to *In re A.J.R.-H*, 188 A.3d 1157 (Pa. 2018), Mother asserts that Mr. Albert's testimony concerning the Children's records was further hearsay. *See id.* at 10.

The Pennsylvania Rules of Evidence ("the Rules") establish that "relevant evidence" is generally admissible, so long as it concerns the underlying controversy and has probative value. *See* Pa.R.E. 401-402. The Rules, however, concomitantly prohibit the admission of hearsay, unless the evidence offered is subject to at least one of a limited number of exceptions. *See* Pa.R.E. 802-803; *see also A.J.R.-H*., 188 A.3d at 1167. "Hearsay" is

defined as a statement that "the declarant does not make while testifying at the current trial or hearing," and which "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2).

Rule 803(6) provides for the hearsay exception regarding "Records of a Regularly Conducted Activity," which states the following:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (6) **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by-- or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which terms includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

In finding that the Children's school records were admissible evidence, the trial court stated the following:

When the [a]djudicatory hearing reconvened on December 28, 2023, a school report generated on December 11, 2023, was presented for the Children. The report included absences for the 2022-2023 school year as well as for the 2023-2024 school year. (See Court's Exhibit D). CUA [c]ase [m]anagement [s]upervisor, Mr. Albert, described the process for obtaining the school records. He credibly testified that he requested the Children's records through the DHS Education Support Center, which obtained the records through the School District of Philadelphia.

Trial Court Opinion, 2/14/2024, at 8. We agree.

Testimony from Mr. Albert confirmed that DHS properly authenticated the documents as aptly stated by the trial court. On direct examination, Mr. Albert testified as follows regarding the procedure for obtaining school records.

Q: And what is your process for obtaining school records?

A: We can obtain the school records directly from the school and/or we can go through DHS [E]ducation [S]upport to obtain the records as well.

Q: And in this particular case, how did you obtain [Children's] records?

A: A request through DHS [E]ducation and [S]upport, who obtain[s] the records through the School District of Philadelphia[.]

N.T., 12/28/2023, at 8. Mr. Albert also testified that the records were generated on December 11, 2023. *See id.* at 8-9.

Based on the foregoing, DHS established that: (1) the records were made "at or near" the time of the adjudication hearing; (2) that DHS obtained these records from the School District of Philadelphia, who keeps the records in the regular course of its "business;" and (3) that DHS regularly obtains

- 9 -

these records utilizing this method. Furthermore, Mother and the GAL provided no evidence that the source of the information, or other circumstances, indicate a lack of trustworthiness or qualification. **See** Pa.R.E. 803(6).

Further, Mother's reliance upon **A.J.R.-H.** is misplaced. In that case, our Supreme Court reversed an order involuntarily terminating a mother's parental rights where the trial court erroneously admitted 167 exhibits and, therefore, concluded that the trial court's decision was not based solely on competent evidence. **See A.J.R.-H.**, 188 A.3d at 1159-1160. The exhibits in that case included more than 1,230 pages and covered numerous subjects from an array of sources and authors. **See id.** at 1161-1162. Regarding the admission of these exhibits, the trial court merely inquired whether the exhibits were contained in the agency's file, and the solicitor affirmed that they were. **See id.** at 1162. The trial court did not query further. **See id.**

In the case *sub judice*, the trial court was not confronted with a myriad of exhibits from varying sources and authors. The court merely made a determination regarding the Children's individual school reports which came from a singular source. Thus, the trial court did not err in admitting the Children's school records or allowing Mr. Albert to testify regarding the same.

In her second issue, Mother contends that on October 12, 2023, the parties rested and provided closing arguments, thus, closing the record. **See** Mother's Brief at 13; **see also** N.T., 10/12/2023, at 17-19. She asserts that

- 10 -

the court mistakenly believed that the record remained open. ***See id.*** at 13. Accordingly, Mother avers that the trial court erred when it reopened the record without proper consideration. ***See*** Mother's Brief at 12-15 (citing ***Commonwealth v. Baldwin***, 58 A.3d 754, 763 (Pa. 2012) (In considering whether to reopen the record, "[a]ll of these factors, such as the timing of the request to open, the nature of the proffered testimony, and the reason for the party's failure to present such evidence during its case-in-chief, are things a trial court would automatically consider[.]")).

In its Rule 1925(a) opinion, the trial court states that it did not close the record, but continued the hearing for presentation of the Children's full school reports, as follows:

> [T]he dependency record for the [a]djudicatory [h]earing was never closed [on October 12, 2023.] The [hearing] began on October 12, 2023. Adjudication was deferred at that time to obtain necessary school records and the December 11, 2023 hearing was continued. Testimony for the [a]djudicatory [h]earing concluded on December 28, 2023.

Trial Court Opinion, 2/14/2024, at 9. We agree. The following colloquy occurred on the record in open court on October 12, 2023:

> THE COURT: Adjudication will be deferred. CUA is to follow up with obtaining a full school report from [this] year as well as last year.
>
> The youth may be excused for the next listing so that they attend school[.] Let's give it a 60[-]day date[.]
>
> . . .
>
> MOTHER'S COUNSEL: And, Your Honor, please note for the record my objection to extending the deferment beyond 30 days.

N.T., 10/12/2023, at 19-20. Assuming *arguendo* that the court closed and then reopened the record, we would find that Mother did not preserve her claim inasmuch as her objection on October 12, 2023, was to "extending the deferment beyond 30 days." *Id.* at 20.

> Our Supreme Court has held:
>
> On appeal, we will not consider assignments of error that were not brought to the tribunal's attention **at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated. *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Id.* (quoting *Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted)).

*State Farm Mut. Auto. Ins. Co. v. Dill*, 108 A.3d 882, 885 (Pa. 2015) (emphasis added). Our Supreme Court further stated that "[i]t is axiomatic that '[i]n order to preserve an issue for appellate review, a party must make a **timely and specific objection** at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.'" *Id.* at 887 (citations omitted) (emphasis added).

During the hearing on December 28, 2023, Mother's counsel objected to reopening the record, but it was untimely because it was made past the time that the court's alleged error could have been corrected. Therefore, even if the record had been closed on October 12, 2023, we would conclude that

Mother's issue is waived because she did not make a timely and specific objection. *See State Farm Mut. Auto. Ins. Co. v. Dill*, *supra*.

Regarding her third issue, Mother argues that the trial court erred by "considering evidence of absences not noticed in the dependency petition." Mother's Brief at 15. Specifically, Mother contends that DHS's petition did not allege absences from the 2023-2024 school year. *See id.* at 16. Further, she contends that, contrary to the court's explanation, DHS did not orally amend its petition. *See id.* at 16-17. Thus, Mother argues that the court violated her guarantee of due process by considering the Children's absences from 2023-2024. *See id.* at 15-16 (citing Pa.R.J.C.P. 1409, cmt, "[t]he court is to make an adjudication of dependency based upon the allegations in the petition, not on alternative grounds. Due process and fundamental fairness require adequate notice of the allegations to afford a reasonable opportunity to prepare a defense."). We disagree.

DHS filed the subject dependency petition in June 2023, which included allegations of the Children's truancy through the end of the 2022-2023 school year. On October 12, 2023, Ms. Barnet testified regarding the Children's absences from the 2023-2024 school year, which had just begun. *See* N.T., 10/12/2023, at 11-12. Counsel for Mother objected to a lack of notice because the dependency petition did not contain allegations regarding the 2023-2024

school year.[7] However, the trial court overruled her objection. **See id.** As related **supra**, the court deferred adjudication until December 2023 to obtain "a full school report from [this year] as well as last year." **Id.** at 19. At this time, it should have been sufficiently clear to Mother's counsel that the court intended to hear evidence regarding the 2022-2023 **and** 2023-2024 school years. Therefore, Mother was afforded abundant time to prepare a defense even though DHS did not amend its petition until the end of the December 28, 2023 hearing.[8]

In the alternative, Mother relies on the Public School Code of 1949, 24 P.S. § 13-1326, to argue that the trial court should have only considered the Children's absences from the 2023-2024 school year since the hearings occurred in the fall of 2023. **See** Mother's Brief at 17; **see also** 24 P.S. § 13-1326 (defining "habitually truant" as "six (6) or more school days of unexcused absences during the **current school year** by a child subject to compulsory school attendance under this article.") (emphasis added). However, she does not cite to any case law, and we are aware of none, that mandates a trial court to only review unexcused absences of the school year

---

[7] We note that allegations regarding the 2023-2024 school year would not have been possible in June 2023, when DHS filed their dependency petition.

[8] In its Rule 1925(a) opinion, the trial court aptly stated that DHS orally amended its dependency petition to include the Children's absences from the 2023-2024 school year. **See** Trial Court Opinion, 2/14/2024, at 10; **see also** N.T., 12/28/2023, at 28. To the extent that Mother contends that DHS did not orally amend its petition, her claim fails.

currently in session. We have reviewed ***In the Interest of J.W.***, 264 A.3d 398 (Pa. Super. 2021) (unpublished memorandum), as persuasive authority that 24 P.S. § 13-1326 is interpreted as "a single school year." ***See id.*** (stating that a child is "considered habitually truant if they miss six or more school days in a single school year and those absences are not justified."). Thus, even assuming *arguendo* that the court should not have reviewed the 2023-2024 school year because it was not alleged in DHS's petition, we would not disturb the subject order because DHS provided clear and convincing evidence that the Children were truant during the 2022-2023 school year.

In her final issue, Mother argues that the trial court erred in adjudicating Children dependent because, "even accepting as true all the inadmissible and unnoticed evidence that the trial court considered, DHS still did not meet its burden to establish that either child was dependent." Mother's Brief at 17. Mother spends time reiterating previous arguments, and then, ultimately contends that DHS did not provide evidence that the Children each had six unexcused absences. ***See id.*** at 19. Specifically, she states that it was not her burden to provide documentation that the Children's absences were excused. ***See id.*** at 21. Regarding R.B., she asserts that she informed the school, via email on December 22, 2023, that four of R.B.'s seven absences should be excused. ***See id.*** at 19.

In its Rule 1925(a) opinion the court provided its rationale in adjudicating the Children dependent pursuant to 42 Pa.C.S.A. § 6302(5), as follows:

> In adjudicating [the] Children dependent, this [c]ourt determined that DHS met its burden by demonstrating that the Children were dependent since they were habitually and without justification truant from school. This [c]ourt heard credible testimony from DHS investigator, Ms. Lipscomb, CUA [c]ase [m]anager, Ms. Barnet, and [c]ase [m]anagement [s]upervisor, Mr. Albert, that the Children were truant from school for the 2022-2023 school year and continued to be truant during the current 2023-2024 school year.
>
> . . .
>
> Mr. Albert testified that according to their December 11, 2023 school records report, R.B. accrued seven unexcused absences and S.B. accrued thirteen unexcused absences [so far in 2023-2024]. For these reasons, it is clear to this [c]ourt that the Children's truancy is habitual and ongoing. While Mother may have contacted the school to have some of R.B.'s absences excused, there is no documentation to indicate that the school received or accepted Mother's excuse [email.] The testimony also reflects that Mother never contacted S.B.'s school to have any of his absences excused. [Thus, t]he Children's habitual truancy is without justification.

Trial Court Opinion, 2/14/2023, at 8-9. We discern no abuse of discretion.

Mr. Albert's testimony supports the court's findings. **See** N.T., 12/28/2023, at 10-12, 17-18. Further, the court acted within its discretion when it did not accept Mother's December 22, 2023 email to the school as an appropriate rebuttal to the inference established by R.B.'s records. **See id.** at 13-14, 21-22; **see also C.M.T., supra**. The record contains no information regarding whether R.B.'s school accepted Mother's explanations. **See id.** at

13-14. Accordingly, the court did not err when it determined that the Children, who were fifteen and sixteen at the time of the final hearing, were subject to compulsory school attendance, and had incurred six or more unjustified absences during the 2022-2023 and 2023-2024 school years.

Based on the foregoing, the trial court was well within its discretion to adjudicate the Children dependent pursuant to 42 Pa.C.S.A. § 6302(5). Therefore, we conclude that Mother is not entitled to relief.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/6/2024