[J-12-2017] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.C.D., A MINOR | : | No. 34 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| APPEAL OF:  COMMONWEALTH OF | : | Court at No. 999 MDA 2014 dated |
| PENNSYLVANIA | : | September 11, 2015 Affirming the Order |
| | : | of the York County Court of Common |
| | : | Pleas at No(s). CP-67-JV-0000720- |
| | : | 2012 and CP-67-DP-0000166-2013 |
| | : | dated May 12, 2014. |
| | : | |
| | : | ARGUED:  March 8, 2017 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                         **DECIDED:  October 18, 2017**

I respectfully dissent from the Majority's position that it is an appropriate exercise of a juvenile court's discretion to terminate its delinquency supervision over a juvenile in order to circumvent an admission criterion of a treatment center.  I recognize this case involved a fact-specific determination by the juvenile court, and I have no doubt that the court had D.C.D.'s best interests in mind.  I further agree with the Majority that when assessing whether early termination should be granted pursuant to Pa.R.J.C.P. 632, a juvenile court must consider the three aims of balanced and restorative justice that are referenced in the Juvenile Act's purpose.  *See* 42 Pa.C.S. § 6301(b)(2).  Nevertheless, I conclude the termination of delinquency supervision for the sole purpose of bypassing the conditions of acceptance into a program amounts to reversible error.

In its order and opinion granting early termination, the juvenile court considered that the York County Office of Children, Youth, and Families (CYF), was the lead agency directing D.C.D.'s placement, rather than Juvenile Probation, and "anticipated

that the agency can continue to effectively supervise his treatment and ensure he is appropriately placed in a facility that meets his needs and continues to rehabilitate him." Trial Ct. Op., 5/12/14, at 9-10. Likewise, the Superior Court acknowledged termination removed Juvenile Probation from supervising D.C.D., but noted D.C.D. would still be supervised by the court and CYF. *See In re D.C.D.*, 124 A.3d 736, 744 (Pa. Super. 2015), *appeal granted*, 134 A.3d 50 (Pa. 2016). However, in my view, wholly divesting Juvenile Probation of its authority and duty to supervise and provide input regarding D.C.D.'s treatment is judicial overreach. Although Juvenile Probation was not the lead agency, it nonetheless exercised concurrent supervision of D.C.D. and opposed the motion to terminate delinquency. Indeed, the record confirms that despite the fact that Juvenile Probation was not the lead agency, it was closely involved in the case and made a number of referrals to different treatment centers after it was determined that D.C.D. continued to act out sexually while at Sarah Reed and that it was no longer an appropriate placement. *See, e.g.*, N.T., 5/9/14, at 45-55 (testimony of Janna Emig of CYF); *accord* 42 Pa.C.S. § 6304 (defining the duties of probation officers in juvenile matters including making recommendations to the court and supervising and assisting a child on probation). D.C.D.'s probation officer testified regarding his opposition to early termination as follows:

> As a juvenile probation officer, with the charges that [D.C.D.] has before the [c]ourt, we wouldn't terminate jurisdiction at this time. I believe he needs, like Ms. Emig said, dual adjudication, and he needs dependency, but we have a couple of sex offense charges, that I don't believe my department would recommend discharging the adjudication at this time.

*Id.* at 96.

It is clear that under the Juvenile Act, an adjudication of delinquency requires the juvenile court to determine both that the child has committed a delinquent act and that

the child is in need of treatment, supervision, or rehabilitation. *Commonwealth v. M.W.*, 39 A.3d 958, 966 (Pa. 2012). Despite the authority of a juvenile court to terminate supervision early, under Pa.R.J.C.P. 632, it is my view that when a child is adjudged to have committed delinquent acts, here indecent assault against his five-year-old sister and harassment by communication, has continued to violate the terms of his supervision by acting out in sexually inappropriate and dangerous ways, and has been found to be in need of treatment, supervision, and rehabilitation, compelling reasons exist for *continued* delinquency supervision of the child. Moreover, unlike the courts below, I have serious reservations that D.C.D.'s status as a dependent child guarantees the aims of delinquency supervision will be satisfied or monitored. Although dependency and delinquency may exist simultaneously, they are distinct adjudications.

> In Pennsylvania a dependent child is one who, among other things, is without proper parental care or control, or has been abandoned by his parents or is without parents. On the other hand, a delinquent child is one who is ten years of age or over who has committed an act designated a crime, other than murder and certain summary offenses. . . . It would be unrealistic in the extreme to equate a dependent child with one adjudicated delinquent. A delinquent child has committed "a delinquent act" which is defined in the Juvenile Act as an "act designated a crime under the law of this Commonwealth, or of another state if the act occurred in that state, or under a Federal law, or under local ordinances." 42 Pa.C.S. § 6302. This must be compared with a dependent child who most often has committed no offense and is frequently a victim of the wrongdoing of someone else, or is suffering because of events which are completely beyond his control.

*Matter of Welsh,* 475 A.2d 123, 126–27 (Pa. Super. 1984) (footnotes omitted).

Based on the serious offenses D.C.D. has been adjudicated delinquent of, and the subsequent concerns about his progress with respect to personal boundaries and appropriate behavior, I cannot agree that terminating Juvenile Probation's supervision to

accommodate acceptance into a treatment program, which prohibits individuals who have active adjudications of delinquency for sexually-based delinquent acts, is appropriate. D.C.D. should remain under Juvenile Probation's continued supervision as he is indisputably in need of rehabilitation, supervision, and treatment. Accordingly, I would reverse the order of the Superior Court. I respectfully dissent.